## PEEFER v STATE

Ohio Appeals, 2nd Dist, Greene Co

No 353.  Decided Nov 10, 1931

Marcus Shoup, Xenia, for plaintiff in error.

Marcus E. McCallister, Prosecuting Attorney, Xenia, for defendant in error.

584

KUNKLE, J.

The offense charged in the affidavit consists of plaintiff in error contributing to the delinquency of Julia Mae Elliott by taking her from the care and custody of her mother and without the consent of her mother and without her mother's knowledge to Newport, Kentucky, and there entering into the marriage ceremony without the knowledge and consent of the mother of Julia Mae Elliott and afterward, viz: on February 9th, living with said Julia Mae Elliott.

Does the affidavit charge an offense under the statutes of Ohio, or in other words, is it a criminal offense under the laws of Ohio for a man over 21 years of age to take a girl a few months under fifteen years of age to Newport, Kentucky, and marry her without the consent and without the knowl-

cdge of the mother of said girl? If so doing is a criminal offense under the laws of Ohio and constitutes delinquency upon the part of the girl, then the plaintiff in error would be guilty of contributing to such delinquency.

Sec 1644 GC specifically defines what acts constitute delinquency. This section is as follows:

"Sec 1644 GC. "Delinquent child" defined. For the purpose of this chapter, the words "Delinquent child" includes any child under eighteen years of age who violates a law of this state, or a city or village ordinance, or who is incorrigible; or who knowingly associates with thieves, vicious or immoral persons; or who is growing up in idleness or crime; or who knowingly visits or enters a house of ill repute; or who knowingly patronizes or visits a policy shop or place where any gambling device or gambling scheme is, or shall be, operated or conducted; or who patronizes or visits a saloon or dram shop where intoxicating liquors are sold; or who patronizes or visits a public pool or billiard room or bucket shop; or who wanders about the streets in the night time; or who wanders about railroad yards or tracks, or jumps or catches on to a moving train, traction or street car, or enters a car or engine without lawful authority, or who uses vile, obscene, vulgar, profane or indecent language; or who is guilty of immoral conduct; or who uses cigarettes, cigarette wrapper or substitute for either, or cigars or tobacco, or who visits or frequents any theatre, gallery, penny arcade or moving picture show where lewd, vulgar or indecent pictures, exhibitions or performances are displayed, exhibited or given, or who is an habitual truant; or who uses any injurious or narcotic drug. A child committing any of the acts herein mentioned shall be deemed a juvenile delinquent person, and be proceeded against in the manner hereinafter provided."

We assume it will be agreed by counsel that unless the conduct of Julia Mae Elliott falls within the definition of a delinquent as defined by §1644 GC that she could not be legally classed as a delinquent and if she was not a delinquent, then it would follow that no one contributed to any delinquency upon her part. It will be noted that entering into a marriage contract without respect to age is not classed as an act of delinquency.

Sec 1654 GC provides the penalty for contributing to the delinquency of a minor.

Many authorities have been cited from sister states. We shall not attempt to enter into a discussion of the numerous authorities cited by counsel but will content ourselves largely with merely announcing our conclusion after a consideration of many of the authorities so cited. It will not be necessary to consider many authorities outside of Ohio, as our own courts have settled the determining issues in this case.

Questions relating to delinquency have been before the various courts of this state quite frequently and there are many reported decisions announcing the rules applicable to such cases.

The reasoning found in the case of State v Meyers, 56 Oh St, 340 has application to the case at bar. The first paragraph of the syllabus of this case is as follows:

"A statute defining a crime or offense cannot be extended by construction, to persons or things not within its descriptive terms, though they appear to be within the reason and spirit of the statute."

The facts necessary to be set forth in an affidavit are pertinently set forth in the following cases, viz:

In Willison v State, 21 O.C.C. (NS) 526, the syllabus is as follows:

"In a prosecution for contributing to the delinquency of a minor, the affidavit, in order to charge a crime, must allege that the minor is under eighteen years of age, and is a delinquent within the meaning of the statute, and that the defendant is guilty of contributing to such delinquency."

In the case of Edmonds v State of Ohio, 30 Ohio Appellate Reports, p. 195, (6 Abs 477), the first and second paragraphs of the syllabus are as follows:

"1. There can be no valid conviction on an affidavit which charges no offense against the laws of the state.
"2. Affidavit charging defendant contributed to delinquency of a minor held fatally defective, even after judgment of conviction, where it did not specify some facts showing minor was delinquent child, within the meaning of §1644 GC."

This case therefore requires a determination of whether the conduct of plaintiff in error in encouraging, assisting or aiding Julia Mae Elliott to go to Newport and marrying her without the knowledge or consent of her mother constitutes an act of delinquency as defined in §1644 GC.

If we correctly understand the position of

586

counsel for defendant in error, it is that this marriage is void under the laws of Kentucky and also under the laws of Ohio and that the plaintiff in error violated the laws of Ohio by taking this girl to Kentucky and marrying her.

The trial court evidently entertained the same view and was of opinion that this marriage was absolutely void both under the laws of Kentucky and the laws of Ohio.

An examination of the Digest of Kentucky decisions discloses the following rules:

"Marriage of an infant without consent of parent or guardian is not for that cause alone invalid."

Cannon v Allsberry, 1 Mar. 76, Kentucky Reports.

"Marriage procured by fraud is voidable only at election of the party defrauded. The party who commits the fraud is bound and remains bound until the party deceived has made his or her election and will thereafter be bound or not according to the election made.

"The right to avoid a marriage is personal and if not taken advantage of by the party in his life time, it cannot be exercised after his death by his executors or devisees."

Tompert's Exr's v Tompert, 13 Bush. 326.

"As a promise of the infant to marry, is in its nature beneficial, it evidently comes within that description of promises which are not void but voidable only and it was accordingly so held in the case of Holt v Ward, 2 Strange 937, Vol. 1, page 57 Marshall's Reports, Kentucky.

Cannon v Allsberry, 1 Mar. 76, Ky. Reports.

"The validity of a marriage must be determined by the law of the place ·where the marriage occurred."

Potter v Stanley, 219 SW, 167, 187 Kentucky 292.

Counsel for both plaintiff. in error and defendant in error have cited various sections of the General Code of Kentucky.

Counsel for plaintiff in error rely upon §§2097 and 2106 of the Code of Kentucky. These sections are as follows:

"Sec 2097 GC of Kentucky: §5 "A marriage is prohibited and declared void when at the time of marriage, the male is under 16, or the female is under 14 years of age."

"Sec. 2106. If either of the parties be under 21 years of age, and not before married, no license shall issue without the consent of his or her father or guardian, or if there is none, or he is absent from the state, without the consent of his or her mother, personally given or certified in writing to the clerk over his or her signature, attested by two subscribing witnesses, and proved by the oath of one of them, administered by the clerk. Where the parties are personally unknown to the clerk, a license shall not issue until bond, with good surety, in the penalty of $100.00 is given to the Commonwealth, with the condition that there is no lawful cause to obstruct the marriage."

Counsel for defendant in error in the brief quote and rely upon §2105 of the laws of Kentucky as follows:

"Section 2105. No marriage shall be solemnized without a license therefor issued by the clerk of the county in which the female resides at the time, but when she is of full age or a widow, and it is issued on her application in person or by writing signed by her, it may be by any county clerk."

Sec 11181 GC, of Ohio defines who may contract marriage in Ohio. This section is as follows:

"Male persons of the age of eighteen years, and female persons of the age of sixteen years not nearer of kin than second cousins, and not having a husband or wife living, may be joined in marriage. Any such person under the age of twenty one years must first obtain the consent of his or her parents, surviving parent or guardian."

It is admitted that these parties were married in Kentucky; that Julia Mae Elliott represented herself as being twenty one years of age and that such representation was made in the hearing and presence of plaintiff in error; that a license for such marriage was duly issued by the Kentucky authorities; that they were married by a person duly authorized to perform the marriage ceremony; that they immediately returned to Xenia where they separated and on the 9th day of February she came to Springfield and she and her husband lived togegther as man and wife for a day or two at least, until separated by his arrest.

He testifies, on page 27 of the record:

"Q. You love and respect this girl, do you?

A. Yes, sir, I certainly do.
Q. You want her to be your wife?
A. I certainly do."

She testifies, at page 10 of the record, as follows:

"Q. On February 9 you went to Springfield and started housekeeping with your husband John Peefer?
A. Yes, sir.
Q. Do you love and admire this man?
A. Yes, sir, I do.
Q. Do you still love him?
A. Yes, sir, I do.
Q. You have never heard anything against his reputation?
A. No, sir, I have not."

Was this marriage between plaintiff in error and Julia Mae Elliott void or merely voidable? If it is absolutely void, then that is the end of this controversy. If it is merely voidable upon the part of Julia Mae Elliott, then it is apparent from the undisputed testimony that she has no desire to avoid the same and we are of opinion that she is the only one who could avoid the contract if it is merely a voidable contract. In 42 Oh St 23, in the case of Holtz v Dick, the second and third paragraphs of the syllabus are as follows:

"2. Marriage entered into in this state when the wife is less than 16 years of age, becomes irrevocable by cohabitation at the time, and after she arrives at that age; she may also ratify the marriage, at that age, in other ways, as by letters to her spouse, addressing him as her husband, and signing the letters by her christian and his surname.
"3. Where the parties to a marriage in this state arrive at the common law age of consent, and also arrive at a period when they are man and woman, the parents have no authority to compel separation in opposition to the wishes and interests of the husband and wife, on the ground that such wife had not, at the time of the marriage, arrived at the age of 16 years, and that the marriage was without the parents' consent; and where such separation is caused by her parents, not for her protection, but solely to gratify their feelings of ill will and hatred toward her husband, he may maintain an action for the injury."

At the time of this marriage, Julia Mae Elliott was of the common law age of consent,

It is well established in this state that a marriage valid where made is valid here unless expressly prohibited by law.

The case of Klinebell et v Hilton, 25 O. N.P. (NS) 167 is a decision by Judge Rodgers, late of the Franklin County Common Pleas bench. Judge Rodgers was recognized as one of the outstanding Judges in Ohio.

The syllabus of this case is as follows:

"1. Marriage emancipates an infant from parental control, and injunction against consortium does not lie where petitioned for by the parents, who allege that their daughter married without their consent when less than fifteen years of age, but who fail to produce consent of the daughter to a dissolution of the marital contract.
"2. The marriage in this state of a girl between twelve and sixteen years of age is not rendered void by lack of parental consent, notwithstanding the statutory requirement that parental consent must first be obtained; and such a contract can be avoided only with the consent of the infant."

A case frequently quoted, although also a Common Pleas decision, is that of Courtright v Courtright et, 26 Bull. 309. This decision was rendered before the amendment of the statute increasing the age of consent of females to eighteen years. The value of this decision depends not only upon the reasoning contained in this decision but because of the same having been affirmed by the Supreme Court without opinion in 53 Oh St 685. The syllabus in this case, in part, is as follows:

"2. The statutes of this state provide that a female may enter into the marriage relation upon arriving at the age of 16 years, but do not declare that a marriage under that age is void. Hence, where a female over the common law age of 12 years though under the statutory age of 16 years, enters into the marriage relation in this state, while such marriage would be voidable at the election of the infant, it is by no means void; and if she should continue to live and cohabit in such relation until after arriving at this statutory age, the marriage would become perfect and irrevocable without any further ceremony; if the female should die or not abandon such marriage before arriving at the statutory age, its validity cannot be questioned."
"5. Where a man of full age and a girl over the common law age of consent, but under the statutory age, both residents of Ohio, go out of this state for the purpose

of becoming married in another state, and in accordance with its laws, intending to immediately return and continue their residence in this state, and such purpose and intention is carried out the marriage thus consummated cannot be set aside, either because it was not contracted in accordance with the law of this state, or because the parties went out of the state for the purpose of evading the laws of this state."

Counsel for plaintiff in error have urged various other errors in the brief. It is claimed that the conviction is not supported by the evidence.

While it may be unnecessary for us to pass upon any of the additional grounds of error, yet we shall briefly allude to a few of them.

The affidavit does contain a statement that, "the said Julia Mae Elliott did knowingly associate with a vicious and immoral person, said vicious and immoral person being one John Peefer, etc., etc."

We have considered the record in this case with care and are clearly of opinion that the record does not support the charge that John Peefer is a vicious and immoral person, unless he is such solely by reason of his having married Julia Mae Elliott.

The record discloses that John Peefer boarded with the mother of Julia Mae Elliott for about seven years. He states that he left there because of the complaining disposition of the mother. He also states that during this time he not only paid his board, but when her sons were out of work he supported the entire family. In this statement he is supported by a married daughter of Mrs. Elliott. She stated that he supported the entire family at times. It appears when he left, the mother brought suit against him, which case was tried and decided in his favor. The mother of Julia Mae Elliott came to Springfield a day or so before the arrest of plaintiff in error and it is claimed made a proposition to plaintiff in error in regard to settlement of this case. The mother does not claim that Peefer's conduct toward Julia Mae Elliott during the time he was living at her house was improper in any respect. On page 18, she was asked:

"Q. You never knew that there was anything going on between your daughter and John Peefer.

"A. I never saw any crooked move. She was always with me.

"Q. Was your daughter in the habit of going out? A. No, sir."

Joe Peefer, a brother of plaintiff in error, testifies on page 31 of the record as to the conduct of his brother and states that he never knew or heard anything against him. Mrs. Ryan, another daughter of Mrs. Elliott, and a sister of Julia Mae Elliott, testifies that plaintiff in error is a man of good character and she never heard anything against him. This is the daughter who testified to plaintiff in error helping keep the family of her mother when her sons were out of work. Her husband, John Ryan, testifies that plaintiff in error is a good moral man. Edward Saunders, page 37, says that he has known plaintiff in error for twenty-five years and that his reputation is good. William Dailey, page 38, testifies to the fact that he has known plaintiff in error all his life and that his reputation is good. James Demint, on page 40, states that he is in charge of the Maintenance Department of the Ridgley Trimmer Company in Springfield and that plaintiff in error has worked for them about three years and has conducted himself fine and attended to business and that he has not heard anything against the character of plaintiff in error. Charles Foriman, page 41, states that he is Assistant Superintendent of the Ridgley Trimmer Company and in answer to the question as to what kind of a man plaintiff in error was he answered as follows:

"A. Well, he has been nothing but a gentleman in my presence and the time he has been employed under me.

"Q. You have never heard anything derogatory?

"A. No, sir."

This includes all of the witnesses who testified on this subject, with the exception of Mrs. Anderson on page 42 of the record. She was asked this question:

"Q. Mrs. Anderson, I will ask this question of you, whether in your own opinion, by reason of what you have heard in this particular position, whether you would consider a man is guilty of immoral conduct who is 42 years old if he should marry a child 14 years old without the consent of the mother, whether or not he would be guilty of immoral conduct."

Objected to. Objection overruled.

Counsel for defendant took exception to the ruling of the court.

"A. I think he certainly is guilty of immoral conduct, and he or any other man in

Greene County who does a similar act should have the limit of the law."

Counsel for defendant objected to the answer and asked that the answer be stricken from the record.

"Court: That will be ruled out; that part of the statement as to the immoral part may stand."

The witness does not claim to personally know plaintiff in error and her statement is based upon his having married Julia Mae Elliott under the circumstances disclosed by the record. The question is objectionable for different reasons, chief of which is that it calls for an answer to a question that was for the jury. This is not a case for expert testimony such as the question objected to seeks to elicit. Had the witness known plaintiff in error, it would have been perfectly proper for her to have testified as to his character or reputation. The objection should have been sustained. The answer was prejudicial and should have been entirely stricken out and the jury cautioned to disregard the same.

Counsel for plaintiff in error also complain of the charge of the trial court; the refusal of the trial court to give certain special instructions to the jury and other alleged errors. In view of our conclusion as to the law of this case, as above announced, it will be unnecessary for us to consider these additional grounds of error.

We do not hesitate to say that the marriage of a man of the age of plaintiff in error with a girl of the age of Julia Mae Elliott does not meet with our approval, but we are required to determine the legal and not the ethical questions. We must decide such legal questions in view of the state of the law as we find same rather than as we might think the law should be.

From a consideration of the Ohio authorities, we are unanimously of opinion that the marriage contract in question was not void but was merely voidable upon the part of Julia Mae Elliott and that she has not sought to avoid the same; that her going to the State of Kentucky under the circumstances disclosed by the record and entering into such marriage contract without the consent or knowledge of her mother did not constitute an act of delinquency under §1644 GC and that plaintiff in error therefore could not be guilty of contributing to her delinquency when none existed.

Entertaining these views, we hold that the trial court erred in overruling the demurrer of plaintiff in error to the affidavit, and also erred in overruling the motion of plaintiff in error in arrest of judgment, and that the Court of Common Pleas erred in sustaining the judgment of the trial court. This court therefore proceeding to render the judgment which should have been rendered by the lower courts does hereby sustain the demurrer of plaintiff in error to the affidavit and does also sustain the motion of plaintiff in error in arrest of judgemnt, and remands the cause for such further proceedings as are provided by law.

ALLREAD, PJ, and HORNBECK, J, concur.