STATE OF WEST VIRGINIA

*v.*

MARVIN REAY AUSTIN

(No. 13684)

Decided May 3, 1977.

Ronald R. Brown, Brown & Williams, Kingwood, Clark B. Frame, Wilson, Frame & Rowe, for plaintiff in error.

Chauncey H Browning, Attorney General, Richard E. Hardison, Deputy Attorney General, for defendant in error.

MILLER, JUSTICE:

This appeal is from the Circuit Court of Preston County and involves a conviction of contributing to the delinquency of a minor. The defendant was found guilty on the third count of an indictment, which count charged him with marrying outside this State a female child of the age of 15, without her parents' consent and using an altered birth certificate. The trial court dismissed the second count of the indictment and the jury returned a not guilty verdict on the first and fourth counts. The entire indictment centered around acts arising out of the defendant's marriage.

The defendant was 22 years of age at the time of the marriage, which took place in Oakland, Maryland, on November 6, 1974. Both the defendant and his wife were residents of this State prior to their marriage, and after their marriage returned to West Virginia, where they continued to reside. Prior to their marriage, they had dated for approximately two years.

The principal error assigned by the defendant is that the marrying of a 15-year-old girl without her parents' consent does not constitute, as a matter of law, an act of contributing to the delinquency of a minor. We agree.

The crime of contributing to the delinquency of a minor (herein contributing) is of statutory origin and was

unknown at common law.[1] In this State, as in most, the statute is broadly phrased and must be read *in pari materia* with the statute defining a delinquent child to ascertain the elements of the crime.[2] *State v. Flinn,* ___ W. Va. ___, 208 S.E.2d 538, 548 (1974).

Ordinarily, the crime of contributing is viewed with the perspective of two considerations: (1) the underlying act of delinquency of the juvenile, and (2) the acts of the defendant which are alleged to have caused or encouraged the delinquency. In this State, however, this analysis is somewhat obscured in that it is not necessary, in sustaining a charge of contributing, to have established that the conduct of the defendant actually resulted in the delinquency of the juvenile.[3] *State v. Harris,* 105 W. Va. 165, 169, 141 S.E. 637, 639 (1928); *see also,* Annot., 18 A.L.R.3d 824 (1968).

In *State v. Flinn, supra,* this Court had before it a challenge to the statute on the ground that it was un-

---

[1] *State v. Williams,* 73 Wash. 678, 132 P. 415 (1913). Our statute, *W. Va. Code,* 49-7-7, is as follows:

"A person who by any act or omission contributes to, encourages or tends to cause the delinquency or neglect of any child, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not to exceed five hundred dollars, or imprisoned in the county jail for a period not exceeding one year, or both."

[2] *W. Va. Code,* 49-1-4 is as follows:

" 'Delinquent child' means a person under the age of eighteen years who: (1) Violates a law or municipal ordinance; (2) Commits an act which if committed by an adult would be a crime not punishable by death or life imprisonment; (3) Is incorrigible, ungovernable, or habitually disobedient and beyond the control of his parent, guardian, or other custodian; (4) Is habitually truant; (5) Without just cause and without the consent of his parent, guardian, or other custodian, repeatedly deserts his home or place of abode; (6) Engages in an occupation which is in violation of law; (7) . . . . (8) Frequents a place the existence of which is in violation of law; (9) . . . ."

[3] The lack of a more precise causative test in this and other jurisdictions has been the subject of criticism. *See* Giles, *Contributing to Delinquency,* 8 St. Louis U.L.J. 59 (1963); Comment, *Contributing to Delinquency: An Exercise in Judicial Speculation,* 9 Akron L. Rev. 566 (1976); Comment, *Juvenile Delinquency Survives Constitutional Attack: Confusion or Certainty,* 78 W.Va. L. Rev. 145 (1975).

constitutionally vague. The Court concluded that the statute, when read *in pari materia* with the definition of a delinquent child found in *W. Va. Code*, 49-1-4, was constitutional except as to subsections (7) and (9) of the Act defining a delinquent child. Subsections (7) and (9) were held to be unconstitutional under the Due Process Clause of Article III, Section 10 of the *Constitution of West Virginia* and the 14th Amendment of the *United States Constitution*.

*Flinn* formulated a "causation test" whereby the acts which are alleged to constitute contributing to the delinquency of a minor must be of such a nature that "... delinquency must be a reasonably certain result of the act complained of and reasonably sure to befall a certain child in a reasonable time." ___ W. Va. at ___; 208 S.E.2d at 552-53.

In *State v. Westfall*, 126 W. Va. 476, 29 S.E.2d 6 (1944), it was held that a contributing charge must be proven beyond all reasonable doubt and that it is necessary to prove that the defendant committed the acts knowingly. *Westfall* did not cite *State v. Harris, supra,* which held that criminal intent was not a necessary element of the crime of contributing.

The United States Supreme Court, basing its decision upon the Due Process Clause of the 14th Amendment, reached the same result as *Westfall* in overturning a State contributing conviction. *Vachon v. New Hampshire*, 414 U.S. 478, 38 L. Ed. 2d 666, 94 S. Ct. 664 (1974). We conclude that the rule set forth in *Westfall* is a correct statement of the law and that the crime of contributing to the delinquency of a minor requires proof that the defendant knowingly committed the acts.[4] *See also,* Annot., 31 A.L.R.3d 848 (1970).

---

[4] We are reinforced in this conclusion by the fact that *Flinn*, while not directly holding that *Harris* was overruled on the intent question, did state that: "In our view, although not specifically set out in the statutory language, *W. Va. Code*, 49-7-7, requires an element of intent before a person can be guilty of contributing to, encouraging or tending to cause the delinquency or neglect of a child." ___ W. Va. at ___, 208 S.E.2d at 552

There are two provisions in the statute defining a delinquent child which could reasonably be applicable to the contributing charge under consideration: "(1) Violates a law or municipal ordinance;" and "(5) Without just cause and without the consent of his parent, guardian, or other custodian, repeatedly deserts his home or place of abode."

While under *Harris* and the causation test of *Flinn* an actual violation of a law or ordinance by the juvenile is not necessary to establish the crime of contributing, it is necessary to determine the type of law or municipal ordinance involved which will support the charge of contributing. Stated another way, can contributing rest upon a law or municipal ordinance which carries no criminal penalty or where the penalty is a nominal fine?

Few cases have been found which discuss this problem. In *State v. Cutshaw*, 7 Ariz. App. 210, 437 P.2d 962 (1968), the court considered whether a contributing conviction could stand which rested upon the inducing of a minor to violate the city's loitering ordinance. It concluded the conviction was void as a matter of law. The delinquency statute defined a delinquent as one who "violates a law of this state or an ordinance of a county, city or town defining a crime." 437 P.2d at 971. The court reasoned that not all criminal laws could be used as an underlying basis for a contributing charge, but only those that were designed to protect the morals, health or welfare of the child.

*Cutshaw* cited *Stone v. State*, 220 Ind. 165, 41 N.E.2d 609 (1942), in which that court refused to find the giving of a cigarette to a minor, although an act in violation of a criminal statute, a sufficient violation to form the basis for a contributing charge. Indiana's juvenile delinquency statute at that time was similar to ours in that it did not specify whether the law or ordinance must be criminal.[5]

---

[5] Juvenile delinquency statutes in some States specifically use the term "violation of criminal laws" in defining this act of delinquency. *See*, 11 Pa. C.S.A. §50-102(2).

We view the rationale in *Cutshaw* as illogical where it limits contributing charges to those underlying offenses which the involved juvenile is encouraged to commit that only can be categorized as protecting his health, welfare or morals. Most criminal laws are not designed to protect the health, welfare or morals of the person that breaks them, but are enacted to protect the rights and properties of others. The reason they may effect the health or welfare of the person who breaks them is by virtue of the punishment inflicted. The purpose of the contributing crime is to insulate the juvenile from those who would encourage him to break the law, not just those laws that are enacted for his protection, but those which protect the rights of others.

We agree that there is a need for some selectivity in determining the type of law or ordinance which may support a contributing charge. As *Stone* illustrates, there are certain laws which, if violated, are so inconsequential that they ought not form a basis for such a charge. We establish as a beginning point that a law or ordinance which carries no criminal penalty cannot be utilized as a foundation for a contributing charge.

If the legislative body which has enacted such law or ordinance has not attached a criminal penalty to it, we must conclude that its violation was not deemed to be an antisocial act. Consequently, it cannot be implied that its violation was intended collaterally to form the basis of a criminal charge for contributing. Much the same reasoning applies to those crimes which carry only a nominal fine. Again, it is the inconsequentialness of the punishment that compels the conclusion that society did not intend serious criminal punishment to flow from their violation.

Tested by the foregoing principles, the contributing conviction which we here consider cannot stand. The charge that the defendant procured the marriage by use of an altered minor female's birth certificate is insufficient as a matter of law. The essence of a contributing charge is that the defendant's acts caused the minor to

tend to commit an act of delinquency. No evidence was ever introduced to connect the defendant to having caused the minor to alter her birth certificate. Indeed, there was no evidence that there was an alteration of the certificate by anyone.[6]

The charge of marrying a minor under the age of consent, without her parents' consent, brings several statutes under examination. Two sections in our marriage law deal with the age for marriage and the necessity of parental consent where nonage is involved. *W. Va. Code*, 48-1-1, -8. Both statutes contain the mandatory word "shall", but neither provides a criminal penalty for its violation.

Several of our marriage statutes carry a criminal penalty for their violation. There is a criminal penalty imposed on an applicant who misrepresents facts in the physician's statement or laboratory report relating to the standard serological tests. W. Va. Code, 48-1-6d. This provision does not deal with age.

Criminal penalties are imposed upon the clerk of the county court if he knowingly issues a marriage license contrary to the law, but nothing in this section imposes a penalty on the applicant. *W. Va. Code*, 48-1-20. Persons who have married within the degree of relationship prohibited by statute are liable criminally. *W. Va. Code*, 48-1-18.

Finally, there are criminal penalties for failing to endorse and return the marriage license on the part of the person who is authorized to perform the marriage, and it is unlawful for such person to solicit the celebration of marriages. *W. Va. Code*, 48-1-22, -23.

The foregoing analysis leads us to the conclusion that the Legislature determined that certain acts under our marriage statutes should carry a criminal penalty. However, the Legislature did not decide, as it might have, that as a matter of public policy marrying under the age of consent is a criminal act.

---

[6] Under *W. Va. Code* 61-4-1, it is a felony under certain circumstances to alter public records.

In Maryland, where the marriage occurred, it is a misdemeanor for a person to marry under the age of consent. The penalty is a fine of not less than $25 nor more than $250. Md. Code, Art. 62, § 11(a). As noted previously, West Virginia does not attach any criminal penalty for marrying under the age of consent.

Both States recognize that even though a party is married under the age of consent, this does not render the marriage void. *Perkey v. Perkey,* 87 W. Va. 656, 106 S.E. 40 (1921); *Picarella v. Picarella,* 20 Md. App. 499, 316 A.2d 826 (1974). West Virginia permits such marriages to be annulled under certain circumstances, but until the marriage is actually annulled it is valid. W. Va. Code, 48-2-2, -3; *Perkey v. Perkey, supra; see* Colson, *West Virginia Marriage Law* 43 W. Va. L. Rev. 33, 41 (1936). Maryland appears to hold that such an underage marriage is valid and is never subject to annulment on the basis of nonage and lack of parental consent. *Picarella v. Picarella, supra.* It is rather anomalous to find a State which civilly sanctions an underage marriage without the parents' consent and yet retains the right to punish the party criminally.

The Maryland misdemeanor statute presents the question of whether its violation by the minor female in this case can form the cornerstone of a contributing charge against the defendant husband, on the theory that by marrying her he induced her to violate the statute.[7]

---

[7] We recognize that even if the violation of the Maryland statute were to be urged on the basis of a contributing charge in this State, it might be held that the penalty imposed by the statute was of such a nominal nature as not to warrant the support of such a charge. This would also present an interesting criminal venue question under Article III, Section 14 of the *West Virginia Constitution. See,* Lorensen, *Criminal Venue in West Virginia,* 70 W. Va. L. Rev. 163 (1968). Some States define as an act of delinquency the violation of any law of another State or the United States. Fla. Code 39.01(11). This question of the extraterritorial scope of the delinquency act has not been discussed in any case that we have found involving a contributing charge. We leave these considerations for another day.

In a legal as well as a figurative sense, the heart of this matter is bound up in the marriage of the parties involved. There is no suggestion in the record that the defendant husband and his wife are other than happy. The wife had nothing to do with instigating this contributing charge.

The law has long recognized that while marriage is founded on contractual principles, it is a status which society, acting through the State, fosters and encourages. The State has a vital interest in matters surrounding a marriage and for this reason has the right to enact laws governing marriages. It is generally recognized that a marriage performed in another State which is valid under its laws will be recognized as valid in this State. *Perkey v. Perkey, supra.*

There are exceptions. *W. Va. Code*, 48-1-17, provides that a marriage contracted in another State by our residents, with the intention of evading our marriage laws, will be governed by our law. This may be nothing more than a statutory extension of the common law rule that a State is not required to recognize a marriage performed in another State which is repugnant to the former State's statutes or public policy. *Spradlin v. State Compensation Commissioner*, 145 W. Va. 202, 113 S.E.2d 832 (1960).

There is little question that the validity of the marriage involved in this case would be tested by our marriage laws under *W. Va. Code*, 48-1-17. The parties were residents of this State and utilized the less restrictive Maryland marriage application law, were married, and then returned to this State to reside.[8] We have previously pointed out that under our marriage laws this marriage is not invalid and that this State has provided no criminal penalties on the parties for an underage marriage. The State, having elected to settle the law surrounding the status of this marriage, should not be per-

---

[8] Maryland permits one party to a marriage to apply for the license and requires no serological test. Md. Code, Art. 62, § 6.

mitted to utilize the violation of a foreign marriage statute as a basis for a contributing charge in this State.

The other possible ground for supporting the contributing charge, causing the minor to repeatedly desert her parents' home without just cause and without the parents' consent, also fails as a matter of law. Once the marriage is lawfully made, the minor has a right to live with her husband and therefore has just cause to absent herself from her parents' home. The marriage emancipates the minor child from her parents. *Lawson v. Brown*, 349 F. Supp. 203 (1972); *Kirby v. Gilliam*, 182 Va. 111, 28 S.E.2d 40 (1943); *La Crosse County v. Vernon County*, 233 Wis. 664, 290 N.W. 279 (1940).

When we turn to other jurisdictions which have considered the question of whether the marriage to a female under the age of consent and without her parents' consent constitutes contributing to the delinquency of such minor, we find few cases in this field. Each of them approaches the question from the standpoint of whether the marriage is valid and, finding it to be, they conclude that there is no crime of contributing. No attempt is made to analyze the underlying juvenile delinquency law to determine if it would support a contributing charge. We cannot fault this approach as it has the basic merit of simplicity and obviously reflects the feeling of those courts that a valid marriage ought not to be tormented by criminal prosecution of the parties. *See, Spencer v. People*, 133 Colo. 196, 292 P.2d 971 (1956); *Peefer v. State* 42 Ohio App. 276, 182 N.E. 117 (1931); *People v. Ham*, 206 Ill. App. 543 (1917).

Virginia, in a somewhat analogous situation, under a criminal statute making it unlawful for a person to illegally seize a child from one having custody, held that the defendant could not be convicted in view of the fact that he married the child. *Payne v. Commonwealth*, 201 Va. 209, 110 S.E.2d 252 (1959). There, a 37-year-old male had taken a 12-year-old girl from her home and married her in the State of Maryland. The court held that a lack of criminal intent, coupled with the policy of the State of

Virginia favoring marriage, precluded prosecution. On this latter point, it cited the earlier case of *Needam v. Needam*, 183 Va. 681, 33 S.E.2d 288 (1945), where the following language is found:

> "No law has sufficed to prevent marriage between minors. They still come together matrimonially, heedless of any law, and children are born of such unions. The governing powers are the impulses of nature, human frailty and love. The question before the law-making power is not whether such unions are wise or foolish, but whether they shall be accorded a legal status or held as meretricious; and whether children, not consulted about being born, or about their parentage, shall bear the honor of legitimacy or the disgrace of bastardy." 33 S.E.2d at 290.

There can be no doubt that child marriages are not an easy problem for the involved parents. The aspirations they had for their children may well be diminished. Immaturity is often accompanied by instability and the chances for a permanent marriage may be lessened. The Legislature, as well as the courts, is not unaware of these problems and has provided a civil remedy for annulment. We cannot but echo the humanitarian sentiments expressed by the Virginia courts and conclude that the status of our law is such that the courts cannot bestow a criminal punishment on a party to an underage marriage under the circumstances of this case. Before such criminal sanction can be imposed, the Legislature will have to set the crime in clear and express language.

For the foregoing reasons, this case is reversed with direction that a judgment of acquittal be entered in favor of the defendant.

*Reversed.*