159 P.3d 584

**Dale Joseph FUSHEK, Petitioner/Appellee,**

v.

**STATE of Arizona, Real Party in Interest/Appellant.**

**No. 1 CA–CV 06–0598.**

Court of Appeals of Arizona, Division 1, Department D.

June 14, 2007.

Law Office of Thomas M. Hoidal, P.L.C. by Thomas M. Hoidal, and Stinson, Morrison, Hecker, L.L.P. by Michael C. Manning, Phoenix, Attorneys for Petitioner/Appellee.

Andrew P. Thomas, Maricopa County Attorney by Barbara A. Marshall, Deputy County Attorney, Lisa Aubuchon, Deputy County Attorney, Diane Gunnels Rowley, Deputy County Attorney, Phoenix, Attorneys for Real Party in Interest/Appellant.

## OPINION

WINTHROP, Presiding Judge.

¶ 1 The State of Arizona appeals the grant of relief to Dale Joseph Fushek in his special action challenging the denial of a jury trial in justice court proceedings on misdemeanor charges of assault and contributing to the delinquency of a minor. If convicted, Fushek may be required to register as a sex offender

pursuant to Arizona Revised Statutes ("A.R.S.") sections 13–118 (2001) and 13–3821(C) (2005). In light of such a serious potential consequence, the superior court directed that these charges be tried to a jury. In this appeal, the State seeks a reversal of that ruling and remand to the San Tan Justice Court for a non-jury trial. Because the superior court accepted jurisdiction of the merits of the special action, we review the superior court's decision on the merits. *Amancio v. Forster*, 196 Ariz. 95, 95, ¶ 2, 993 P.2d 1059, 1059 (App.1999); *Bilagody v. Thorneycroft*, 125 Ariz. 88, 92, 607 P.2d 965, 969 (App.1979); *see also* A.R.S. §§ 12–120.21(A)(1) (2003), –2101(B) (2003).

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 The State charged Fushek in San Tan Justice Court with three counts of assault, five counts of contributing to the delinquency of a minor, and two counts of indecent exposure, all of which allegedly arose out of Fushek's service as pastor of St. Timothy's Catholic Church and oversight of a youth organization called Life Teen between 1984 and 1993. In addition, the State filed an allegation of sexual motivation with respect to all of these misdemeanor charges. The State subsequently dismissed two counts of assault and one count of indecent exposure.

¶ 3 On May 24, 2006, the justice court ruled that the remaining indecent exposure count would be tried to a jury, but the remaining assault and contributing to the delinquency of a minor counts were not jury eligible. The court also declined to sever the offenses. Fushek accordingly brought a special action in Maricopa County Superior Court. After briefing and oral argument, the superior court accepted jurisdiction and granted relief on the ground that the serious consequences of registration as a sex offender required a jury trial on all charges. This appeal followed. The State concedes that Fushek is entitled to a jury trial on the indecent exposure count, but is unwilling to have a jury determine Fushek's guilt on the remaining counts. For the following reasons, we reverse the superior court's ruling.

## ANALYSIS

¶ 4 Whether a defendant is entitled to a jury trial is a legal question subject to *de novo* review. *Urs v. Maricopa County Attorney's Office*, 201 Ariz. 71, 72, ¶ 2, 31 P.3d 845, 846 (App.2001).

¶ 5 The Arizona Constitution states that "[t]he right of trial by jury shall remain inviolate." Ariz. Const. art. 2, § 23. Moreover, Section 24 of Article 2 provides: "In criminal prosecutions, the accused shall have the right . . . to have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed. . . ." Ariz. Const. art. 2, § 24.

¶ 6 In *Derendal v. Griffith*, the Arizona Supreme Court explained that Article 2, Section 23, "preserves the right to jury trial as it existed at the time Arizona adopted its constitution." 209 Ariz. 416, 419, ¶ 9, 104 P.3d 147, 150 (2005). The court modified the standard for determining whether a particular misdemeanor qualifies for a jury trial and developed a two-step inquiry. *Id.* at 425, ¶¶ 36–37, 104 P.3d at 156. First, Article 2, Section 23, requires the offense be tried to a jury if it has a common law antecedent that guaranteed the right to trial by jury at the time of Arizona statehood. *Id.* at ¶ 36. The common law offense and the offense charged must share "substantially similar elements." *Id.*

¶ 7 Second, in the event there is no common law antecedent, the court must determine whether the offense is "serious" within the meaning of Article 2, Section 24, of the Arizona Constitution. *Id.* at ¶ 37. In that regard, the court will presume the offense is petty if punishable by no more than six months' incarceration, but the defendant may rebut the presumption with proof that the offense carries "additional severe, direct, uniformly applied, statutory consequences that reflect the legislature's judgment that the offense is serious." *Id.* The collateral consequences must "approximate in severity the loss of liberty that a prison term entails." *Id.* at 423, ¶ 24, 104 P.3d at 154.

### 1. No Common Law Antecedent

#### a. Assault

¶ 8 The assault count fails the first *Derendal* test. The Arizona Supreme Court has held that a misdemeanor assault is "the equivalent of a simple battery at common law, which was not a crime requiring a jury trial." *Bruce v. State*, 126 Ariz. 271, 273, 614 P.2d 813, 815 (1980); *accord Phoenix City Prosecutor's Office v. Klausner*, 211 Ariz. 177, 179, ¶¶ 6–8, 118 P.3d 1141, 1143 (App. 2005). Fushek conceded in the trial court that assault "has no jury-eligible common law antecedent." Therefore, the assault charges do not satisfy the first prong of Derendal.

#### b. Contributing to the Delinquency of a Minor

¶ 9 Likewise, the crime of contributing to the delinquency of a minor did not exist at common law. *See Recent Case Law Development, Contributing to the Delinquency of Juveniles: A Clarification of Utah Law*, 1999 Utah L.Rev. 1075, 1077 (1999) ("At common law, there was no crime for contributing to the delinquency of a minor."). Rather, the offense is statutory. *State v. Williams*, 73 Wash. 678, 132 P. 415, 416 (1913); *accord State v. Austin*, 160 W.Va. 337, 234 S.E.2d 657, 659 (1977); *State v. Tritt*, 23 Utah 2d 365, 463 P.2d 806, 810 (1970); *State v. Harris*, 315 S.W.2d 849, 851 (Mo.Ct.App.1958); *see also State v. Dunn*, 53 Or. 304, 99 P. 278, 280 (1909) (" 'Delinquency' was unknown to the common law, for which reason we must look exclusively to the statute for the definition of this offense.").

¶ 10 Arizona became a state in 1912, and the following year contributory dependency and contributory delinquency became misdemeanor crimes under the Revised Statutes of 1913. *See* Ariz.Rev.Stat. tit. 9, ch. 3, § 268 (1913). Conviction under the 1913 statute resulted in a fine not to exceed $500 or imprisonment in the county jail for a period not exceeding one year, or both. *Id.* at § 256. The statute states that it was not to be construed as inconsistent with or repealing any other act imposing punishment for taking indecent liberties with children; selling liquor, tobacco or firearms to them; or allowing them in evil or disreputable places. *Id.* at § 269.

¶ 11 Fushek conceded in superior court that the offense of contributing to the delinquency of a minor is "not of common law origin." He nevertheless on appeal relies on a treatise identifying an English crime of neglect dating back to 1908. *See* W. Blake Odgers & Walter Blake Odgers, 310 *The Common Law of England* (Sweet & Maxwell, Ltd.1920) (1911). The neglect offenses discussed there, however, were statutory. "There is a significant distinction between a common law offense and a statutory offense, both existing at the time of statehood." *Abuhl v. Howell*, 212 Ariz. 513, 514, ¶ 11, 135 P.3d 68, 69 (App.2006). Even statutory rights under the Arizona territorial penal code "do not qualify as common law antecedents that would require a jury trial under *Derendal.*" *Id.*[1] The cited English statute does not meet the common law antecedent standard.

¶ 12 On appeal, Fushek invokes the 1913 statute as a common law antecedent; however, we have been provided no evidence to support this assertion, and case law refutes it. The 1913 statute did not exist prior to statehood and therefore fails to support Fushek's claim. *See Stoudamire v. Simon*, 213 Ariz. 296, 298, ¶ 6, 141 P.3d 776, 778 (App.2006) (rejecting jury eligibility argument because possession of marijuana and drug paraphernalia were not recognized as crimes at the time of statehood).[2]

---

1. We note that section 895 of the 1901 Penal Code allowed jury trials on all offenses:

    Issues of fact must be tried by [a] jury unless a trial by jury be waived in criminal cases not amounting to [a] felony, by the consent of both parties, expressed in open court and entered in its minutes. In cases of misdemeanor the jury may consist of twelve, or any number less than twelve, upon which the parties may agree in open court.

    However, the issue here is not whether the crime was jury eligible by statute, but whether it was jury eligible at common law.

2. Fushek further argues that "[n]eglect of children or other persons unable to take care of themselves was an indictable offense at common law" and contends that all indictable offenses at common law were jury-eligible crimes. He relies on a footnote in *Urs*, 201 Ariz. at 73 n. 3, ¶ 7,

¶ 13 Fushek also relies on *Brockmueller v. State*, 86 Ariz. 82, 340 P.2d 992 (1959), but his reliance is misplaced. In *Brockmueller,* the Arizona Supreme Court noted that "[t]he Arizona statutes prohibit only the causing or encouraging of acts which have the effect of injuring the morals, health or welfare of a child. Such statutes have a long history of common-law interpretation which renders sufficiently clear and meaningful language which might otherwise be vague and uncertain." *Id.* at 84, 340 P.2d at 994. This statement acknowledges the common law interpretation of the statute; it does not signify that the offense of contributing to the delinquency of a minor existed at common law.

### 2. No Uniformly Applied Collateral Consequences

¶ 14 Fushek alternatively argues that the contributing to the delinquency of a minor and assault counts are jury eligible based on the special allegation that they were committed with sexual motivation. If such a finding is made, the court may require the defendant to register as a sex offender under A.R.S. § 13–3821(C). According to Fushek, this additional consequence satisfies the second *Derendal* test.

¶ 15 Although this consequence arises from statutory law, and is one that can have severe collateral consequences, we cannot agree that it is "uniformly applied" as that term is defined in *Derendal.* Section 13–3821(C), A.R.S., provides:

the judge who sentences a defendant ... for an offense for which there was a finding of sexual motivation pursuant to § 13–118 may require the person who commit-

ted the offense to register pursuant to this section.

¶ 16 The court thus has discretionary authority under A.R.S. § 13–3821(C) to decide whether to order a convicted defendant to register as a sex offender. *See In re Sean M.,* 189 Ariz. 323, 324, 942 P.2d 482, 483 (App.1997) (holding that the juvenile court did not abuse its discretion in ordering a juvenile to register as a sex offender). Accordingly, not everyone convicted of the crime is designated a sex offender, and the penalty is therefore not uniform. *See Stoudamire,* 213 Ariz. at 299, ¶ 12, 141 P.3d at 779 (holding that licensing restrictions are not applied to all convicted offenders and thus are not uniform collateral consequences).

¶ 17 Fushek counters that, under *Blanton,* the court must assume that the sex offender registration requirement will apply in determining whether an additional severe consequence exists. *Blanton,* however, refers only to the assumption that the maximum authorized prison term will apply in determining initially whether the defendant is entitled to a jury trial. 489 U.S. at 543 & n. 7, 109 S.Ct. 1289. In showing the exception to *Derendal,* however, the defendant must prove that the severe collateral consequence applies uniformly to all persons convicted of such offenses. *Derendal,* 209 Ariz. at 425, ¶ 37, 104 P.3d at 156. "[T]his element of the *Derendal* analysis is concerned with only those consequences that would apply to all defendants based on the statute's language." *Ottaway v. Smith,* 210 Ariz. 490, 495, ¶ 16, 113 P.3d 1247, 1252 (App.2005). Because the consequence of sex offender registration is discre-

---

31 P.3d at 847 n. 3, which provides " 'Indictable offenses' at common law were jury-eligible crimes." *Urs* in turn relies upon *District of Columbia v. Colts,* 282 U.S. 63, 73, 51 S.Ct. 52, 75 L.Ed. 177 (1930), which held that the offense of reckless driving was a serious offense at common law, as distinguished from petty offenses "subject to summary proceedings without indictment and trial by jury." A close reading of *Colts* does not substantiate the broad sweep Fushek attributes to the *Urs* footnote. In any event, as the State points out, at least some misdemeanors were indictable at common law. *See, e.g., Donta v. Commonwealth,* 858 S.W.2d 719, 724 (Ky.Ct. App.1993) ("At common law, a breach of public

duty ... was indictable as a misdemeanor offense.").

Moreover, one commentator suggests that *Colts* has been implicitly overruled. The opinion focused upon "the nature of the offense" and the danger posed to life and limb; this component has since been rejected in *Derendal, Blanton v. City of North Las Vegas,* 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989), and *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970). *See* Hon. George T. Anagnost, *Trial By Jury And "Common Law" Antecedents: What Hath Derendal Wrought?,* 43 Ariz. Att'y 38, 40 (Nov.2006).

tionary with the court, it is not uniformly applied and the second *Derendal* requirement is not satisfied.

## CONCLUSION

¶ 18 We reverse the superior court's order and remand the case to the San Tan Justice Court for further proceedings consistent with this opinion.

CONCURRING: SUSAN A. EHRLICH and SHELDON H. WEISBERG, Judges.

