945 P.2d 1251

STATE of Arizona, ex rel. Roderick
G. McDOUGALL, Phoenix City
Attorney, Petitioner.

v.

Hon. Malcolm STROHSON, Magistrate of
the Municipal Court of Phoenix,
Arizona, Respondent,

and

Dale W. CANTRELL, Real
Party in Interest.

No. CV–97–0118–SA.

Supreme Court of Arizona,
En Banc.

Sept. 4, 1997.

Roderick G. McDougall, Phoenix City Attorney by Ronald Ozer, Assistant Phoenix City Prosecutor, Phoenix, for Petitioner.

Neal W. Bassett, Phoenix, for Dale W. Cantrell.

Lowell D. Hamilton, Mesa City Prosecutor by R. Kevin Hays, Chief Assistant City Prosecutor, Mesa, for Amicus Curiae Mesa City Prosecutor's Office.

## OPINION

MOELLER, Justice.

### PROCEDURAL HISTORY

Respondent Dale W. Cantrell was charged in Phoenix Municipal Court with simple assault, a class 1 misdemeanor, in violation of A.R.S. § 13–1203(A)(1). The victim of the alleged assault was the sixteen-year-old son of respondent's girlfriend. In accordance with Arizona's domestic violence statutes, A.R.S. §§ 13–3601 and 13–3602, the complaint designated the offense to be "domestic

violence," a designation that is unchallenged in this proceeding.

Respondent requested a jury trial. In doing so, he acknowledged that, under established Arizona law, misdemeanor assault historically has been held not to require a jury trial. He contended, however, that the recent enactment of a federal law relating to firearms, 18 U.S.C. § 922(g)(9), now requires Arizona to grant him a jury trial. The federal law prohibits possession of a firearm which has been shipped or transported in interstate or foreign commerce by persons who have been convicted of a "misdemeanor crime of domestic violence" as that term is defined in 18 U.S.C. § 921(a)(33)(A). 18 U.S.C. § 922(g)(9). Respondent argued that if he were convicted of misdemeanor assault under Arizona law and the federal law applied to him, he would be unable to hunt or possess a weapon for self-protection. This fact, according to respondent, entitles him to a jury trial.[1] The municipal court agreed and set the case for trial to a jury. The state, through the Phoenix City Attorney, filed a special action directly in this court.

### ISSUE

Whether Congress' recent enactment of 18 U.S.C. § 922(g)(9) requires Arizona to change its rule that jury trials are not required in misdemeanor assault cases for those individuals who may be subject to the federal firearms act if convicted.

### SPECIAL ACTION JURISDICTION

█ By previous order we accepted jurisdiction of this special action and ordered oral argument, which has been held. We now set forth our reasons for accepting special action jurisdiction.

First, special action is available where there is no "equally plain, speedy, and adequate remedy by appeals." Ariz. R.P. Sp. Act. 1(a). Here, the state has *no* remedy by appeal. *See* A.R.S. §§ 13–4032, 22–375; *State v. Miller,* 172 Ariz. 294, 295, 836 P.2d 1004, 1005 (App.1992). Second, the pleadings show that, in 1995 in the City of Phoenix alone, approximately 5300 domestic violence assault complaints were filed, and an additional 4600 such cases were filed in 1996. An amicus brief from the City of Mesa shows that adoption of a rule requiring jury trials in these assault cases would significantly impact that jurisdiction. Clearly, given the volume of these cases in city courts and in justice of the peace courts, resolution of the jury trial issue is a matter of statewide concern. *See Sanchez v. Coxon,* 175 Ariz. 93, 94, 854 P.2d 126, 127 (1993). Third, the issue presented is entirely one of law, not requiring the resolution of any facts. *Id.* Fourth, the issue of entitlement to a jury trial is an issue properly brought via special action. *Spitz v. Municipal Ct.,* 127 Ariz. 405, 406, 621 P.2d 911, 912 (1980).

In our view, the special action presents an issue that merits a definitive resolution at this time by this court without requiring that the issue wend its way here through special actions in the superior court and the court of appeals. Prompt resolution of the issue is in the best interests of vast numbers of citizens and of the state itself.

### DISCUSSION

### I. Development of Arizona Law to Date

Arizona has long provided its citizens with greater access to jury trials than is required

---

1. We state respondent's argument as he stated it here and in the lower court. At oral argument, counsel for respondent for the first time advanced the suggestion that application of the federal statute would interfere with his state constitutional right to bear arms under Article II, Section 26 of the Arizona Constitution. No such constitutional claim was pled, argued, briefed, or decided below and, for that reason, we decline to reach it. Respondent's first reference to the potential constitutional issue was contained in his response to the City of Mesa's amicus curiae brief filed in this court. The reference was ge-

neric and specified no particular provision of either the state or federal constitution. We do not permit amici to inject new issues into a case on appeal. *Town of Chino Valley v. City of Prescott,* 131 Ariz. 78, 84, 638 P.2d 1324, 1330 (1981); *City of Tempe v. Prudential Ins. Co. of America,* 109 Ariz. 429, 432, 510 P.2d 745, 748 (1973). It follows that we should not permit parties to inject new issues on appeal in response to amici briefs. We express no opinion as to whether the result in this case would be different if the issue had been properly presented.

by the federal constitution. Federal constitutional law has evolved such that, unless the crime is punishable by more than six months incarceration, it is presumptively a petty offense not entitled to a jury trial. *Lewis v. United States*, 518 U.S. 322, ——, 116 S.Ct. 2163, 2166, 135 L.Ed.2d 590 (1996); *Blanton v. North Las Vegas*, 489 U.S. 538, 543, 109 S.Ct. 1289, 1293, 103 L.Ed.2d 550 (1989). The United States Supreme Court has indicated that some exceptions to this presumptive rule may exist where there are other significant consequences flowing from the conviction in addition to incarceration, but the exception has rarely, if ever, been applied. *See Blanton*, 489 U.S. at 543, 109 S.Ct. at 1293.

Arizona has looked to the length of possible incarceration as highly important, but not controlling, on whether a jury is required. In *Rothweiler v. Superior Ct.*, 100 Ariz. 37, 410 P.2d 479 (1966), this court concluded that Arizona courts also would examine the moral quality of the act charged, and its relationship to common law crimes. Thus, in *Rothweiler* this court held that a defendant charged with driving under the influence was entitled to a jury trial. *Id.* at 44–45, 410 P.2d at 484–85. Rothweiler was subject to no more than six months jail time, so he was not eligible for a jury trial under current federal constitutional standards. *See Lewis*, 518 U.S. at 322, 116 S.Ct. at 2166. In *State v. Superior Court*, 121 Ariz. 174, 589 P.2d 48 (App.1978), the court of appeals, applying *Rothweiler*, held that a person charged with shoplifting was entitled to a jury trial because the crime was one of moral turpitude and the consequences of a conviction were sufficiently serious. *Id.* at 175–76, 589 P.2d at 49–50. In so holding, the court noted the relationship between the statutory crime of shoplifting and the common law crime of larceny. *Id.* at 176, 589 P.2d at 50.

In the most recent case in which this court spoke on this issue, we held that a defendant charged with possession of marijuana was entitled to a jury trial. *State ex rel. Dean v. Dolny*, 161 Ariz. 297, 778 P.2d 1193 (1989). We first noted that our legislature had defined "petty offense" to exclude any offense for which any sentence of incarceration could be imposed. *Id.* at 299–300, 778 P.2d at 1195–96. Although the statutory definition was not controlling with respect to the right to a jury trial, we concluded it was entitled to considerable deference. *Id.* We then discussed the three-part test of *Rothweiler.* We determined that the moral quality prong of the *Rothweiler* standard was not strictly limited to crimes that involved moral turpitude in its classic sense. *Id.* at 300, 778 P.2d at 1196.

We further concluded that a conviction for possession of marijuana involved consequences sufficiently grave to warrant a jury trial. *Id.* We observed that anyone convicted for possession of an illegal drug could expect, as a result of such a conviction, decreased employment opportunities or the imposition of employment conditions such as drug counseling, treatment, or testing. *Id.* Moreover, we noted that certain occupational and professional licenses could be unavailable to a person convicted of possession of an illegal drug. *Id.*

Petitioner points out that although a conviction may have a deleterious effect on defendant's employment, it does not automatically warrant a jury trial. This court held, in *Spitz v. Municipal Court*, 127 Ariz. 405, 621 P.2d 911 (1980), that suspending Spitz' liquor license, which prevented him from working in liquor sales, was not a sufficiently grave consequence to warrant a jury trial. *Id.* at 408, 621 P.2d at 914. In the present case, the effect on defendant's employment more closely aligns with the sanction in *Spitz* than in *Dolny.* Here, in contrast to *Dolny*, defendant will not be subject to employment conditions such as counseling, testing or treatment. Moreover, a drug possession conviction potentially could prevent a defendant from getting *any* job, whereas prohibiting a defendant from possessing a gun would only potentially affect employment opportunities in limited areas.

Notwithstanding the fact that Arizona has granted jury trials in cases where a jury was not required by the federal constitution, we have never extended jury status to misdemeanor assault cases. Indeed, we have twice expressly refused to do so. In *Goldman v. Kautz*, 111 Ariz. 431, 531 P.2d 1138 (1975),

this court rejected the request for a jury trial where the charge was simple assault and battery. *Id.* at 433, 531 P.2d at 1140. Harking back to an earlier case, *O'Neill v. Mangum*, 103 Ariz. 484, 445 P.2d 843 (1968), in which the court refused a jury trial for a defendant charged with drunk and disorderly conduct, the *Goldman* court rejected the argument that simple assault and battery required a jury trial because it involved moral turpitude, stating: "We are not convinced, however, that simple battery involves any appreciable degree of moral turpitude in American society today." *Goldman,* 111 Ariz. at 433, 531 P.2d at 1140.

In *Bruce v. State,* 126 Ariz. 271, 614 P.2d 813 (1980), the defendant was charged in city court with two counts of simple assault. The defendant argued that because she might receive consecutive sentences which would total more than six months, she was entitled to a jury trial. *Id.* at 272, 614 P.2d at 814. This court held "that where a defendant is charged with several petty offenses, factually related or arising out of a single event, there is no constitutional requirement of a jury trial, but the actual punishment may not exceed that which would be permissible without a jury trial in case of a single offense." *Id.* In so holding, the court noted that the maximum statutory penalty is the most relevant objective criterion in determining a defendant's constitutional right to a jury trial, but is not the sole criteria. *Id.* at 273, 614 P.2d at 815. The court discussed the other criteria that had been applied in Arizona and then stated: "The assaults charged herein are the equivalent of a simple battery at common law, which was not a crime requiring a jury trial, nor are the charges crimes involving moral turpitude which would require a jury trial." *Id.*

Thus, although Arizona case law provides a broader-based right to jury trial than does the federal constitution, historically there has been no right to a jury trial in Arizona in simple assault cases. The question this case presents is whether the Arizona domestic violence statutes, which now permit a charge of simple assault to be designated as "domestic violence" related, together with the enactment of 18 U.S.C. § 922(g)(9), which would

prohibit possession of firearms by some persons convicted of misdemeanor domestic violence assaults, requires a jury trial. We turn first to the Arizona statutes that permit the designation of an assault as "domestic violence."

## II. Arizona Domestic Violence Laws

In 1980, Arizona adopted certain statutes relative to domestic violence. The term "domestic violence" is defined in A.R.S. § 13–3601(A) to include several crimes, including misdemeanor assault as defined in A.R.S. § 13–1203,

> if the relationship between the victim and the defendant is one of marriage or former marriage or of persons of the opposite sex residing or having resided in the same household, if the victim and defendant or the defendant's spouse are related to each other by consanguinity or affinity to the second degree, if the victim and defendant have a child in common or if the victim or the defendant is pregnant by the other party.

A.R.S. § 13–3601(H) provides that "[e]ach indictment, information, complaint, summons or warrant that is issued and that involves domestic violence shall state that the offense involved domestic violence and shall be designated by the letters DV."

The domestic violence statutes authorize a wide variety of procedural steps that can or may be taken with respect to those offenses designated as domestic violence. Following adoption of the domestic violence statutes, Arizona courts were presented with the question of whether the domestic violence statutes created new substantive offenses. The court of appeals on two occasions held that they did not, stating: "Appellant misreads the [domestic violence] statute. A.R.S. § 13–3601 is a procedural statute; it does not create a separate offense of domestic violence." *State v. Schackart,* 153 Ariz. 422, 423, 737 P.2d 398, 399 (App.1987). Similarly, in *State v. Sirny,* 160 Ariz. 292, 772 P.2d 1145 (App.1989), the court, discussing the interrelationship between the substantive criminal statutes and the domestic violence statutes, said:

Section 13–3601 [the domestic violence statute] sets out the entire scheme for the disposition of eligible offenders. It details specific procedures to be followed from arrest to completion of diversion and specifies which offenses come within the definition of "domestic violence." It describes when and how arrests can be made for those offenses and sets forth conditions and procedures involving release and the imposition of probation. It does not create a separate offense for which punishment can be imposed.

160 Ariz. at 294, 772 P.2d at 1147.

Thus, it is clear that under Arizona law the labeling of the complaint as one involving "domestic violence" does not change the substantive charge. Misdemeanor assault remains misdemeanor assault and is not jury eligible unless the recent adoption of 18 U.S.C. § 922(g)(9) by Congress compels a different result.

### III. The Federal Statute, 18 U.S.C. § 922(g)

18 U.S.C. § 922(g) makes it unlawful for certain designated classes of individuals "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Among the classes of prohibited users or possessors are persons "who [have] been convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9) (amended 1996). "Misdemeanor crime of domestic violence" is defined in 18 U.S.C. 921(a)(33)(A) to mean an offense that is a misdemeanor under federal or state law and

> has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

The state has pointed out that, because the state and federal definitions of domestic violence differ, the respondent here may not be a prohibited firearms possessor under federal law even if he is convicted of a crime described as domestic violence under Arizona law. In the interest of resolving the issue, however, the state has assumed, for purposes of this case, that respondent will be subject to the federal law if convicted.

We therefore turn to a consideration of whether the application of the federal law to a person charged with misdemeanor assault labeled as "domestic violence" under Arizona law entitles the person so charged to a jury trial.

### IV. Application of Arizona Law to This Case

■ Respondent contends that the consequences of his being unable to hunt or to own a firearm for self-protection, if convicted, are sufficiently grave collateral consequences of a conviction that, under a *Dolny* analysis, this court should hold that he is entitled to a jury. The state, on the other hand, suggests that Arizona should discard the *Rothweiler/Dolny* test and be guided entirely by principles of federal constitutional law, so that Arizonans would have no right to a jury trial unless it was commanded by the federal constitution. This was the approach advocated by the dissent in *Dolny*. We rejected it then and do so now.

Alternatively, the state argues that a *Rothweiler/Dolny* analysis, properly applied in this case, leads to the conclusion that respondent is not entitled to a jury trial. We agree.

■ In deciding whether jury trials should be granted in cases where the federal constitution does not require juries, the most significant element is always the potential punishment authorized by the statute creating the crime; that is, the permissible amount of jail time and fines. In determining the potential punishment, Arizona courts have traditionally looked only to Arizona law. *See generally, State ex rel. Dean v. Dolny*, 161 Ariz. 297, 778 P.2d 1193 (1989); *Rothweiler v. Superior Ct.*, 100 Ariz. 37, 410 P.2d 479 (1966); *State v. Harrison*, 164 Ariz. 316, 792

P.2d 779 (App.1990). As previously discussed, however, Arizona courts also have looked at .whether the crime involves moral turpitude, the relationship of the crime to common law crimes, and to the additional serious or grave consequences that might flow from a conviction. In making these determinations, we have never looked to the law of other jurisdictions and the collateral consequences that might be imposed by the other jurisdictions.

We believe an analogous situation is that of a deportable alien. An alien convicted of a crime of domestic violence is deportable. 8 U.S.C. § 1251(a)(2)(E)(I). Yet we do not consider the risk of deportation in determining whether the defendant is entitled to a jury trial on the state charge. Indeed, in accepting a plea agreement, it is not even necessary to advise the pleading defendant that he might be subjecting himself to deportation under federal law. *State v. Vera,* 159 Ariz. 237, 239, 766 P.2d 110, 112 (App.1988).

We believe the approach taken in the past, that is, looking only to the consequences of conviction under Arizona law, is rooted in pragmatism. It is not practical, or indeed even possible, for a state court to conjure up all possible consequences that might flow from a state court conviction when those consequences do not flow from the law of the state. Even in this case, it can be seen from the comparison of the state and federal statutes that some defendants convicted for domestic violence assault in Arizona would be subject to the firearms prohibitions of the federal law and some would not. Conversely, some persons may be subject to the federal prohibition although their offense did not qualify as domestic violence assault under Arizona law. If we were to adopt respondent's argument, city courts and justice of the peace courts would be required to delve into the complexities of federal law in each case to determine whether the individual defendant is entitled to a jury trial. Indeed, accepting respondent's argument might require an examination of the laws of a sister state or all states when a nonresident is

charged with an offense in Arizona. Very real and practical problems exist that are neither suggested nor required by the *Rothweiler/Dolny* approach.[2] In our earlier cases, we have never determined jury eligibility based upon an analysis of the individual defendant before the court. If we were to do so now, we would have the anomalous situation where some persons would be entitled to a jury trial and others would not, although charged with exactly the same substantive Arizona crime.

Because it would be impossible to distinguish, in an expeditious manner, those defendants who might be subject to the federal law from those who might not be, we fear the practical result would be that the lower courts would essentially be compelled to grant a jury trial whenever requested. Given the volume of these types of cases, that is not a requirement we would impose without substantial justification, and we find no such justification here.

Lastly, we believe that to hunt or possess a firearm for self-protection, while admittedly very important to some people, does not present the type of universal grave consequence we have found in cases invoking a right to jury trial. Many people would be completely unaffected by such a consequence.

We note that Arizona also prohibits certain classes of people from owning or possessing firearms. A.R.S. § 13–3102 provides that "A person commits misconduct involving weapons by knowingly ... [p]ossessing a deadly weapon if such person is a prohibited possessor." A "prohibited possessor" includes, among others, persons who at the time of possession are serving a term of probation. A.R.S. § 13–3101(6)(d). Trial courts routinely sentence defendants to terms of probation for offenses within the judicially defined category of "petty offenses." Consequently, petty offenders on probation cannot possess weapons. Because petty offenders have no right to a jury trial, the legislature has determined implicitly that prohibiting a defendant

2. It is interesting to observe that Congress certainly intended the firearm prohibition to apply to persons convicted of offenses in which they were not entitled to a jury. *See* 18 U.S.C. § 921(a)(33)(B)(i)(II) (subsection applies only to cases where person was entitled to jury trial, which implies that the general firearm section includes non-jury cases).

from possessing a weapon is not a sufficiently grave consequence to warrant a jury trial.

## V.  The Special Concurrence

The special concurrence urges us to require Arizona courts to fall into lockstep with federal courts on the issue of jury entitlement. As we have explained earlier in this opinion, Arizona has a long history of providing its citizens with jury trials beyond those minimally required by the federal courts' interpretation of the federal constitution. Because of the approach taken by Arizona courts to date, it has never been necessary to decide whether such differences are required by Arizona's differing constitutional and historical considerations, although the question has been raised. *See Dolny,* 161 Ariz. at 301, 778 P.2d at 1197.

The special concurrence implies that our ruling in this case is contrary to some legislative pronouncement on the same subject. This implication is wholly without substance. The special concurrence reads the legislative prescription of a penalty for a crime as a legislative agreement that jury entitlement will thereafter be governed by federal cases, using the *Blanton* prescriptive six-month rule as a guide. *Blanton v. City of N. Las Vegas,* 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989). We find no support for this position.

The special concurrence also suggests several times that the federal approach is truer to some presumed legislative intent as to when jury trials are appropriate. The special concurrence states that aligning with the federal courts on issues of jury entitlement "properly defers to legislative judgments about the severity of an offense." Spec. Conc. at ——, 945 P.2d at 1259. It quotes *Blanton* for the proposition that "[t]he judiciary should not substitute its judgment as to seriousness for that of a legislature." Spec. Conc. at ——, 945 P.2d at 1259 (quoting *Blanton,* 489 U.S. at 541, 109 S.Ct. at 1292). The special concurrence would bind itself to the federal rule because "it leaves the question of seriousness to the people through their legislative representatives rather than to a temporal majority of any court." Spec. Conc. at ——, 945 P.2d at 1260. Lastly, the

special concurrence quotes the *Clawans* case, stating that "[d]oubts must be resolved, not subjectively by recourse of the judge to his own sympathy and emotions, but by objective standards such as may be observed in the laws and practices of the community taken as a gauge of its social and ethical judgments." Spec. Conc. at ——, 945 P.2d at 1259 (quoting *District of Columbia v. Clawans,* 300 U.S. 617, 628, 57 S.Ct. 660, 663, 81 L.Ed. 843 (1937)).

Although the special concurrence lauds the federal rule for its alleged simplicity of application, even the Supreme Court acknowledges that the "six months rule" is not conclusive and that some offenses will entitle a defendant to a jury trial notwithstanding the fact that the offense carries a maximum punishment of less than six months incarceration. *See Blanton,* 489 U.S. at 543, 109 S.Ct. at 1293. Judgments in individual cases will still have to be made applying "objective standards such as may be observed in the laws and practices of the community taken as a gauge of its social and ethical judgments." *Clawans,* 300 U.S. at 628, 57 S.Ct. at 663. To us, this standard is not noticeably different from our state *Rothweiler/Dolny* standard.

Of greater importance to this discussion of state law, however, is the fact that the Arizona legislature, with one exception, has never expressed itself on the issue of jury entitlement in any of these types of cases. The exception is A.R.S. § 28–692(M), which codified the *Rothweiler* rule requiring jury trials, upon request of the defendant, in DUI cases. The nearest other expression by the legislature on the issue was, as we noted in *Dolny,* to define petty offenses as those in which no incarceration at all is available. *See Dolny,* 161 Ariz. at 299–300, 778 P.2d at 1195–96; *see also* A.R.S. § 13–105(27) (Supp.1996). We have already said in *Dolny* that the *classification* accorded to a crime by the legislature is entitled to great weight in determining jury entitlement, although it is not controlling. *Dolny,* 161 Ariz. at 299–300, 778 P.2d at 1195–96. Much as the special concurrence would defer to a legislative preference, if one were expressed, the simple fact is that questions of jury entitlement involve

constitutional considerations; so judicial abandonment to a legislative preference (again, assuming a legislative preference had been expressed) is not permissible since, clearly, the court is the final arbiter of whether a legislative act passes constitutional muster. *See, e.g., Roosevelt Elem. Sch. Dist. v. Bishop,* 179 Ariz. 233, 877 P.2d 806 (1994).

The legislature has had over thirty years to express its disapproval of the *Rothweiler* test, but has not done so. Indeed, in DUI cases, it has codified it. A.R.S. § 28–692(M). No evidence exists that would lead us to believe that the legislature, in setting statutory penalties for crimes, was implicitly conveying its determination as to whether the crime deserved a jury trial. Indeed, the most relevant statute, A.R.S. § 13–105(27), would indicate that the legislature would go farther than we have gone in granting jury trials because it evinces a legislative intent that no offense carrying any potential imprisonment may be considered "petty."

If the legislature wishes to require Arizona courts to fall into lockstep with the federal courts on this issue, it may say so, or it may seek to set some other standard. Such an action might squarely raise the constitutional issue which was raised, but not decided, in *Dolny,* that is, does the Arizona Constitution require a jury trial in all criminal cases, regardless of the length of incarceration available as punishment. *See Dolny,* 161 Ariz. at 301, 778 P.2d at 1197. To date, because of the application of the *Rothweiler/Dolny* test, which the special concurrence rejects, it has been unnecessary to address or resolve that issue.

### CONCLUSION

Applying established Arizona precedent, the most recent example of which is *Dolny,* to which we adhere, we hold that respondent is not entitled to a jury trial as of right under Arizona law, even assuming he would, if convicted, be a prohibited firearms possessor under federal law. Accordingly, the relief requested is granted, the order granting a jury trial in this case is set aside, and the case shall proceed to trial without a jury.

ZLAKET, C.J., and JONES, V.C.J., and FELDMAN, J., concur.

MARTONE, Justice, concurring in the judgment.

I agree that the defendant is not entitled to a jury trial for this misdemeanor, but for the quite separate reason that we should not consider the collateral consequences of conviction at all. I agree with the view expressed by Justice Corcoran in *State ex rel. Dean v. Dolny,* 161 Ariz. 297, 301, 778 P.2d 1193, 1197 (1989) (Corcoran, J., dissenting) that the framework adopted by the United States Supreme Court for the analogous right to jury trial in the federal Constitution is sounder than our own and we ought to adopt it.

### 1. The Federal Standard

Under the Constitution of the United States, "a defendant is entitled to a jury trial whenever the offense for which he is charged carries a maximum authorized prison term of greater than six months." *Blanton v. City of N. Las Vegas,* 489 U.S. 538, 542, 109 S.Ct. 1289, 1293, 103 L.Ed.2d 550 (1989). If the offense carries a maximum prison term of six months or less, there is a presumption that the offense is petty and that "[a] defendant is entitled to a jury trial in such circumstances only if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one." *Id.* at 543, 109 S.Ct. at 1293. And, "[i]n performing this analysis, only penalties resulting from state action, *e.g.,* those mandated by statute or regulation, should be considered." *Id.* at 543 n. 8, 109 S.Ct. at 1293 n. 8.

Thus, the defendant here has no right to a jury trial under the federal Constitution because the maximum period of incarceration is six months or less, and the collateral firearm consequence is not a penalty that results from the Arizona penal statute.

This is a superior and straightforward approach to the right to jury trial. It is simple in application. Defendants, lawyers and judges would know at the outset of trial

whether there is a right to a jury without exploring the uncertain mine field of collateral consequences. This approach also properly defers to legislative judgments about the severity of an offense.

### 2. The State Standard

*Rothweiler v. Superior Ct.*, 100 Ariz. 37, 410 P.2d 479 (1966), held that one charged with misdemeanor driving under the influence, where the period of incarceration could not exceed six months, was entitled to a trial by jury under the Arizona Constitution. When *Rothweiler* was decided, the Supreme Court of the United States had not yet held that the Sixth Amendment right to jury trial applied to the states through the Fourteenth Amendment. That did not occur until *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), some two years later. In reaching its conclusion, *Rothweiler* examined "[1] the severity of the penalty inflictable, as well as [2] the moral quality of the act and [3] its relation to common law crimes." 100 Ariz. at 42, 410 P.2d at 483.

In *Blanton*, the Supreme Court of the United States reached a contrary conclusion. It held that there was no right to jury trial under the Sixth Amendment for misdemeanor driving under the influence where the statutory penalty did not exceed six months. In contrast to the three-part *Rothweiler* test, the Court focused solely on the first element, the question of penalty. It noted that while its earlier decisions also "focused on [2] the nature of the offense and on [3] whether it was triable by a jury at common law," 489 U.S. at 541, 109 S.Ct. at 1292, in recent years it had moved away from that analysis to a more objective approach, focusing on penalty alone, because of its reliability in gauging society's evaluation of the seriousness of the offense. *Id.* The Court stated that "[t]he judiciary should not substitute its judgment as to seriousness for that of a legislature," *id.*, and that "[d]oubts must be resolved, not subjectively by recourse of the judge to his own sympathy and emotions, but by objective standards such as may be observed in the laws and practices of the community taken as a gauge of its social and ethical judgments." *Id.* at 541 n. 5, 109 S.Ct. at 1292 n. 5 (quoting

*District of Columbia v. Clawans*, 300 U.S. 617, 628, 57 S.Ct. 660, 663, 81 L.Ed. 843 (1937)).

This analysis, of course, discards two of the three *Rothweiler* factors. The "moral quality of the act" is to be determined by the legislature, and not the personal proclivities of the court. In light of the diversity that exists over such questions, the people's representatives are better equipped to do this. And, the "relation to common law crimes" has "been undermined by the substantial number of statutory offenses lacking common-law antecedents." *Blanton*, 489 U.S. at 541 n. 5, 109 S.Ct. at 1292 n. 5.

In *State ex rel. Dean v. Dolny*, 161 Ariz. 297, 778 P.2d 1193 (1989), this court had an opportunity to compare the pre-*Duncan* common law approach of *Rothweiler* to the more contemporary analysis expressed by Justice Marshall in *Blanton*. The court not only chose not to follow the *Blanton* approach, but created a framework of analysis that was even more subjective than *Rothweiler*. *Rothweiler* limited its consideration of the penalty prong to the penalties that flowed directly from the statute under which the defendant would be sentenced. In contrast, in holding that a misdemeanor possession of marijuana charge required a trial by jury, the court looked beyond the statutory penalty to such things as "decreased employment opportunities" and the possible loss of "certain occupational and professional licenses." *Dolny*, 161 Ariz. at 300, 778 P.2d at 1196. The court said that "[t]hese types of consequences bring the crimes out of the category of petty cases and into the category of serious cases, despite the possible penalty being 'only' a $1,000 fine and six months in jail." *Id.* Justice Corcoran dissented and accurately noted that even under the three-part *Rothweiler* test, the consequences to be considered are those flowing from the conviction itself and that "[a]dverse consequences that are *not* provided by the statute, but which nevertheless flow from a conviction, are insufficient to require a jury trial." 161 Ariz. at 303, 778 P.2d at 1199. In this sense, then, instead of moving forward in the direction of *Blanton*, or at least preserving *Rothweiler*, *Dolny* retreated into the uncer-

tain realm of speculative collateral consequences.

The defendant's argument here that the possible application of a federal statute is a collateral consequence follows directly from *Dolny* 's expansion of *Rothweiler*. But today, the court says that we shall look "only to the consequences of conviction under Arizona law," *ante*, at 125, 945 P.2d at 1256, because it is neither practicable nor possible "to conjure up all possible consequences that might flow from a state court conviction when those consequences do not flow from the law of the state." *Ante*, at 125, 945 P.2d at 1256. I thus read the majority as retreating from the *Dolny* expansion of *Rothweiler* and returning to the *Rothweiler* focus on statutory penalty. This, I believe, is a positive development but I would go further, follow *Blanton*, focus solely on statutory penalty, and abandon the quagmire and subjectivity of personal judgments about factor number 2, "moral quality of the act," and factor number 3, "its relation to common law crimes." This would not only bring us up to date but would promote certainty and consistency in the law. As noted by two municipal court judges, the subjective nature of the *Rothweiler* factors leads to unintelligible inconsistencies. They contrast the right to jury trial for driving under the influence, with no right to jury trial for domestic violence assault even though spousal abuse is "viewed with great alarm in our society." B. Robert Dorfman and George T. Anagnost, *Revisiting the Right to Trial by Jury in Misdemeanor DUI Cases*, Arizona Attorney, Jun. 1996, at 28, 32. Contrast also today's decision on domestic violence with *Frederickson v. Superior Ct.*, 187 Ariz. 273, 928 P.2d 697 (App.1996), in which we denied review, which held that one was entitled to a jury trial for the offense of leaving the scene of an accident. The court of appeals said the offense "adversely relect[ed] on his honesty and integrity," and therefore "involv[ed] moral turpitude." *Id.* at 274, 928 P.2d at 698. In a separate opinion, Judge Gerber noted that the definition of moral turpitude was "so broad that it fits most, if not all, crimes." *Id.* at 275, 928 P.2d at 699.

The majority is rightly concerned about the practical problems in administering a jury system in which a judge "would be required to delve into the complexities of federal law in each case to determine whether the individual defendant before the court is entitled to a jury trial." *Ante*, at 125, 945 P.2d at 1256. But the subjective nature of the so-called *Rothweiler/Dolny* three factor test ensures that this will be so in Arizona. The *Blanton* approach under the Sixth Amendment to the United States Constitution avoids all of this. By focusing on statutory penalty, the defendant, counsel, and the court will know when a jury must be convened. And it leaves the question of seriousness to the people through their legislative representatives rather than to a temporal majority of any court.

I would, therefore, get Arizona in line with contemporary federal law and adopt the *Blanton* approach as our own. Under that approach, the defendant here is not entitled to a trial by jury because the maximum period of incarceration for his offense cannot exceed six months, and there are no "additional statutory penalties" that are "so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one." *Blanton*, 489 U.S. at 543, 109 S.Ct. at 1293.