SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| DALE JOSEPH FUSHEK, | ) | Arizona Supreme Court |
| | ) | No. CV-07-0251-PR |
| Petitioner/Appellee, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division One |
| | ) | No. 1 CA-CV 06-0598 |
| STATE OF ARIZONA, | ) | |
| | ) | Maricopa County |
| Real Party in Interest/ | ) | Superior Court |
| Appellant. | ) | No. LC2006-000371-001 DT |
| | ) | |
| | ) | |
| | ) | **O P I N I O N** |
| | ) | |
| _____ | ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Douglas L. Rayes, Judge

**AFFIRMED**
_____

Opinion of the Court of Appeals, Division One
215 Ariz. 274, 159 P.3d 584 (App. 2007)

**VACATED**
_____

STINSON MORRISON HECKER, L.L.P.                              Phoenix
     By   Michael Charles Manning

And

LAW OFFICE OF THOMAS M. HOIDAL, P.L.C.                       Phoenix
     By   Thomas M. Hoidal
Attorneys for Dale Joseph Fushek

ANDREW P. THOMAS, MARICOPA COUNTY ATTORNEY                   Phoenix
     By   Diane Gunnels Rowley, Deputy County Attorney
Attorneys for State of Arizona
_____

**H U R W I T Z**, Justice

¶1      This case requires us to decide whether the Arizona Constitution guarantees a jury trial to a misdemeanor defendant when the State files a special allegation of sexual motivation pursuant to Arizona Revised Statutes ("A.R.S.") § 13-118 (2001).

## I.

¶2      In November 2005, the Maricopa County Attorney filed a complaint in the San Tan Justice Court alleging that Dale Joseph Fushek had committed ten misdemeanors.  The State also filed a special allegation of sexual motivation pursuant to A.R.S. § 13-118[1] for each alleged offense.  If the trier of fact finds sexual motivation, the sentencing judge can require Fushek to register as a sex offender.  A.R.S. § 13-3821(C) (Supp. 2007).[2]

---

[1]      "In each criminal case involving an offense other than a sexual offense, the prosecutor may file a special allegation of sexual motivation if sufficient admissible evidence exists that would justify a finding of sexual motivation by a reasonable and objective finder of fact."  A.R.S. § 13-118(A).

[2]      Fushek allegedly committed the offenses between 1984 and 1993.  Arizona first enacted a sex offender registration statute in 1951.  The modern version, A.R.S. § 13-3821, was enacted in 1983.  1983 Ariz. Sess. Laws, ch. 202, § 13.  Since 1983, the registration and monitoring statutes, A.R.S. §§ 13-3821 to -3829, have undergone several changes, most recently in 2007. 2007 Ariz. Sess. Laws, ch. 84, §§ 1-3; ch. 176, § 4; ch. 287, § 10.  A.R.S. § 13-118 was first enacted in 1995.  1995 Ariz. Sess. Laws, ch. 257, § 1.  We assume for the purposes of this case that these statutes apply retroactively, *State v. Noble*, 171 Ariz. 171, 178, 829 P.2d 1217, 1224 (1992), and therefore cite to the current versions.

2

¶3      The State dismissed three of the charges, and Fushek requested a jury trial on those remaining:  five counts of contributing to the delinquency of a minor, one count of assault, and one count of indecent exposure.  The justice court ruled that Fushek is entitled to a jury trial only on the indecent exposure charge.

¶4      Fushek filed a special action in the superior court. That court accepted jurisdiction and granted relief, finding that Article 2, Section 24 of the Arizona Constitution entitles Fushek to a jury trial on all counts of the complaint.  Citing *Derendal v. Griffith*, 209 Ariz. 416, 425 ¶ 37, 104 P.3d 147, 156 (2005), the superior court found that Fushek has a right to trial by jury because sex offender registration is an "additional, severe, direct, uniformly applied statutory consequence[] that reflect[s] the legislature's judgment that the offense is serious."

¶5      The court of appeals reversed.  *Fushek v. State*, 215 Ariz. 274, 279 ¶ 18, 159 P.3d 584, 589 (App. 2007).  That court concluded that there is no right to a jury trial under Article 2, Section 24 because the trial judge is not required under § 13-3821 to compel a convicted defendant to register as a sex offender, and the statutory consequence is therefore not "uniformly applied."  *Fushek*, 215 Ariz. at 278 ¶¶ 15-16, 159 P.3d at 588.

3

¶6     We granted Fushek's petition for review because this case presents a constitutional question of first impression and statewide importance. *See* ARCAP 23(c)(3). We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

## II.

¶7     The jury trial guarantees of the Arizona Constitution are set forth in Article 2, Sections 23 and 24. Section 23 provides that "[t]he right of trial by jury shall remain inviolate." Ariz. Const. art. 2, § 23. It guarantees a jury trial if the "statutory offense has a common law antecedent that guaranteed a right to trial by jury at the time of Arizona statehood." *Derendal*, 209 Ariz. at 425 ¶ 36, 104 P.3d at 156. The State conceded below that Fushek is entitled to a jury trial on the indecent exposure charge under Section 23.[3] Fushek does not argue that assault and contributing to the delinquency of a minor have common law antecedents meeting the Section 23 test.

¶8     Section 24 guarantees the right to a jury trial "[i]n criminal prosecutions." Ariz. Const. art. 2, § 24. Because the language of Section 24 is virtually identical to that of the Sixth Amendment, which guarantees the right to jury trial "[i]n all criminal prosecutions," U.S. Const. amend. VI, "we have

---

[3]    In its supplemental brief, the State suggests that this concession was in error, but recognizes that it is bound by the concession in this case.

4

construed it consistently with the federal constitution to preserve the right to jury trial only for 'serious,' as opposed to 'petty,' crimes." *Derendal*, 209 Ariz. at 420 ¶ 13, 104 P.3d at 151 (citations omitted).

¶9 Thus, in *Derendal*, we looked to the Supreme Court's opinion in *Blanton v. City of North Las Vegas*, 489 U.S. 538 (1989), to guide our analysis of whether an offense is "serious" under Section 24. *Blanton* stressed that the most relevant criterion for determining whether an offense is serious is "the severity of the maximum authorized penalty." 489 U.S. at 541 (quoting *Baldwin v. New York*, 399 U.S. 66, 68 (1970) (plurality opinion)). *Derendal* similarly noted that "we leave to the legislature primary responsibility for determining, through its decision as to the penalty that accompanies a misdemeanor offense, whether the offense qualifies as a 'serious offense.'" 209 Ariz. at 422 ¶ 21, 104 P.3d at 153.

¶10 "[W]hen the legislature classifies an offense as a misdemeanor and punishable by no more than six months incarceration, we will presume that offense to be a petty offense that falls outside the jury requirement of Article 2, Section 24 of the Arizona Constitution." *Id.; see Blanton,* 489 U.S. at 543 (adopting similar presumption). Under that test,

5

the misdemeanor charges against Fushek are presumptively not jury-trial eligible.[4]

**¶11** The Supreme Court noted in *Blanton* that a legislature's view as to the seriousness of a crime can be reflected not only in the maximum authorized prison term, but also "in the other penalties that it attaches to the offense." 489 U.S. at 542. Thus, in *Derendal*, we held that an offense carrying a maximum exposure of six months' incarceration is jury-trial eligible if the defendant can "demonstrate that additional grave consequences that attend a misdemeanor conviction reflect a legislative determination that the offense is indeed 'serious.'" 209 Ariz. at 422 ¶ 21, 104 P.3d at 153. A defendant attempting to rebut the presumption that a crime is petty must establish three things about an additional consequence. "First, the penalty must arise directly from statutory Arizona law." *Id.* at 422 ¶ 23, 104 P.3d at 153 (citing *Blanton*, 489 U.S. at 543 n.8). "Second, the consequence must be severe." *Id.* at 423 ¶ 24, 104 P.3d at 154. "Finally, we will consider only those consequences that apply uniformly to all persons convicted of a particular offense." *Id.* at 423 ¶ 25, 104 P.3d at 154.

---

[4] The assault charge, a class 3 misdemeanor, carries a maximum incarceration period of thirty days. A.R.S. §§ 13-707(A), 13-1203(A)(3) (2001). Contributing to the delinquency of a minor, a class 1 misdemeanor, carries a maximum sentence of six months. A.R.S. §§ 13-707(A), 13-3613(A) (2001).

¶12    The parties agree that the first prong of this test is satisfied – the potential consequence of sex offender registration arises directly from Arizona statutes, A.R.S. §§ 13-118 and 13-3821. The parties disagree, however, on the application of the uniformity and severity prongs.

**A.**

¶13    The court of appeals concluded that the requirement of uniformity was not met because, even if the State proves sexual motivation beyond a reasonable doubt, the trial court has discretion under § 13-3821(C) whether to order sex offender registration. *Fushek*, 215 Ariz. at 278 ¶ 16, 159 P.3d at 588. The court of appeals believed that only mandatory statutory consequences satisfy the *Derendal* uniformity requirement. *Id.*

¶14    We disagree. The uniformity requirement avoids "the anomalous situation where some persons would be entitled to a jury trial and others would not, although charged with exactly the same substantive Arizona crime." *Derendal*, 209 Ariz. at 423 ¶ 25, 104 P.3d at 154 (quoting *State ex rel. McDougall v. Strohson*, 190 Ariz. 120, 125, 945 P.2d 1251, 1256 (1997)). Accordingly, we will not consider a consequence arising from a statutory scheme unless the consequence would apply to every person convicted of the crime at the time of conviction.

¶15    For example, no jury trial is required for a misdemeanor drug offense simply because a conviction could cause

7

the later denial of an application for a professional license. *See Stoudamire v. Simon*, 213 Ariz. 296, 299 ¶ 12, 141 P.3d 776, 779 (App. 2006). Such a consequence would not affect a defendant who never applied for a license. We would thus be unable at the time of trial to determine whether the defendant faced that particular consequence. In contrast, in this case the State has made a special allegation of sexual motivation. If sexual motivation is found by the trier of fact, the justice court is authorized without more to impose a registration requirement upon conviction. A.R.S. § 13-3821(C)*; see Foote v. United States*, 670 A.2d 366, 372 (D.C. 1996) (considering only judge-imposed penalties and refusing to consider sanctions "imposed only in hypothetical civil or administrative proceedings" for purposes of the Sixth Amendment jury-trial right). The uniformity requirement is met because every time a special allegation of sexual motivation is filed, the defendant against whom the allegation is made faces possible sex offender registration as part of the sentencing court's disposition of the case.

¶**16** The fact that the trial judge is not required upon a finding of sexual motivation to impose sex offender registration does not mean that the potential consequence is not uniformly applied. It is enough that all defendants in such a position face the possibility of the consequence. The maximum potential

**B.**

¶17      Given its conclusion that the "uniformity" prong of *Derendal* was not satisfied, the court of appeals did not determine whether sex offender registration is a sufficiently severe consequence to require a jury trial under Article 2, Section 24.[5]  Our task is thus to determine whether registration as a sex offender is such a grave consequence that it "reflect[s] a legislative determination that the offense is indeed 'serious.'"  *Derendal*, 209 Ariz. at 422 ¶ 21, 104 P.3d at 153.

**1.**

¶18      The State argues that *State v. Noble*, 171 Ariz. 171, 829 P.2d 1217 (1992), compels the summary rejection of Fushek's jury trial claim.  *Noble* held that the then-extant sex offender registration statute could be applied to defendants who had

---

[5]      The court of appeals seems to have assumed without deciding that the severity prong was met, stating without further analysis:  "Although this consequence arises from statutory law, *and is one that can have severe collateral consequences*, we cannot agree that it is 'uniformly applied' as that term is defined in *Derendal*."  *Fushek*, 215 Ariz. at 278 ¶ 15, 159 P.3d at 588 (emphasis added).

committed their crimes before the statute's enactment without violating the ex post facto clauses of the federal and state constitutions. *Id.* at 178, 829 P.2d at 1224. *Noble* concluded for the purposes of ex post facto analysis that the registration statute was more regulatory than punitive under the test set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963).[6] *Id.* The State therefore asserts that registration cannot be considered a statutory "penalty" under the *Derendal* collateral consequences test.

¶19       We reject the State's argument. The issue before us is not whether sex offender registration is criminal punishment for ex post facto purposes, but rather whether it is a statutory consequence reflecting a legislative determination that Fushek's alleged offenses are "serious." As the Supreme Court has noted, the *Mendoza-Martinez* test addresses only whether a sanction is civil or criminal. *Austin v. United States*, 509 U.S. 602, 609-

---

[6]    *Noble* relied heavily on the particulars of the statute then before the Court, which limited access to information in the sex offender registry to law enforcement personnel and, in some cases, potential employers and government agencies. These restrictions "significantly dampen[ed] [the registration statute's] stigmatic effect." 171 Ariz. at 177, 829 P.2d at 1223. Access to registration information is today considerably broader. In 1998, the legislature provided for a sex offender website, making the information of some offenders available to the public at large. 1998 Ariz. Sess. Laws, ch. 291, § 5 (codified as amended at A.R.S. § 13-3827). In addition, the current statute requires that individuals and groups in the communities where offenders live and work be notified of the offenders' presence. A.R.S. §§ 13-3825(C), (G), 13-3826(E)(1)(a).

10 & n.6 (1993). The test does not measure whether a sanction is sufficiently severe to trigger the right to jury trial under the Sixth Amendment. *Cf. People v. Castellanos*, 982 P.2d 211, 217 (Cal. 1999) (plurality opinion) ("[T]he method of analyzing what constitutes punishment varies depending upon the context in which the question arises.").

**2.**

¶20    Fushek, in turn, asserts that this case is controlled by application of a simple mathematical formula. He starts from the premise that a potential sentence of six months and one day entitles a defendant to a jury trial. He then contends that six months' incarceration plus sex offender registration is a more severe penalty than six months plus one day of imprisonment and that a jury trial is therefore automatically warranted when sex offender registration is authorized.

¶21    We also reject this mechanistic approach. In *Blanton* the defendant was exposed not only to a sentence of six months, but also to a fine, loss of his driver's license, and a requirement to attend an alcohol abuse course. 489 U.S. at 539-40. Virtually all defendants would accept exposure to an additional day of imprisonment to avoid these consequences. *Blanton* nonetheless held that, for Sixth Amendment purposes, the consequences were not so severe, even when viewed together with the maximum prison term, to compel the conclusion that the

11

offense was viewed as serious by the Nevada legislature.  *Id*. at 544.

**3.**

¶22     The constitutional issue before us cannot be resolved by the approaches suggested by the State and Fushek.  Rather, we must determine whether this is a "rare situation," *Blanton*, 489 U.S. at 543, in which the additional statutory penalty, "viewed in conjunction with the maximum authorized period of incarceration," *id.*, "reflect[s] a legislative determination that the offense is indeed 'serious.'"  *Derendal*, 209 Ariz. at 422 ¶ 21, 104 P.3d at 153.  To do this, we must examine the specific provisions of the sex offender registration statutes.

¶23     These statutes do not provide for termination of the registration requirement, except for registrants who committed offenses as juveniles.  *See* A.R.S. § 13-3821(F)-(H).[7]  Thus, once imposed, sex offender registration is a lifelong obligation. *See Fisher v. Kaufman*, 201 Ariz. 500, 502 ¶ 8, 38 P.3d 38, 40 (App. 2001)*; State v. Lammie*, 164 Ariz. 377, 382-83, 793 P.2d

---

[7]     Under A.R.S. § 13-3826(E)(2), the community notification guidelines committee was required to submit a recommendation to the governor and the legislature about a process by which a court could determine if "an offender is no longer required to register."    The    committee    simply    recommended    that    the legislature continue to study and analyze whether such a process "is the appropriate public policy for this state."  Ariz. State Leg., Community Notification Guidelines Comm., Final Report, Dec. 15, 2004, *available at* http://azmemory.lib.az.us/.

12

134, 139-40 (App. 1990). The duration of the registration requirement makes this statutory consequence much more severe than a comparatively short probation period. *See United States v. Nachtigal*, 507 U.S. 1, 5 (1993) (holding that the Sixth Amendment does not require a jury trial when the potential penalty is five years of probation).

¶24    At the time of registration, the offender must provide, in addition to any other information required by the director of the Department of Public Safety, all names by which he is known, his mailing address, his physical residence, fingerprints, photograph, any "required online identifiers,"[8] and the names of the websites or internet communication services where those identifiers are used. A.R.S. § 13-3821(I). For his entire life, the registrant must annually update his records and obtain a new state identification card, even if no changes have occurred since the last update. *Id.* § 13-3821(J).

¶25    For the rest of his life, a sex offender must notify law enforcement within seventy-two hours of any move or change of name. *Id.* § 13-3822(A)-(B). A move requires notification to sheriffs in both the original county and the destination county; each must be informed in writing, and the latter must also be

---

[8]    "'Required online identifier' means any electronic e-mail address information or instant message, chat, social networking or other similar internet communication name, but does not include social security number, date of birth, or pin number." A.R.S. § 13-3821(Q)(2).

informed in person. *Id.* An offender who studies or works at an institution of postsecondary education must initially notify the county sheriff of that jurisdiction and keep him informed of any changes in enrollment or employment status. *Id.* § 13-3821(N). A transient offender must register with the local sheriff every ninety days. *Id.* § 13-3822(A). If an offender changes a required online identifier, he must notify the sheriff within seventy-two hours and before using the identifier. *Id.* § 13-3822(C). An offender who fails to register is guilty of a class 6 felony, and a registrant who does not keep his information updated is guilty of a class 4 felony. *Id.* § 13-3824. Those offenses carry, respectively, one-year and two-and-one-half-year presumptive prison sentences for first-time offenders. *Id.* § 13-701(C) (2001).

¶26 Widespread publicity accompanies sex offender registration. For a level two or three offender, the offender's name, address, age, current photograph, conviction, and risk assessment level appear on the sex offender website. *Id.* § 13-3827(A)-(B).[9] A sheriff or local law enforcement official must "notify the community of the offender's presence in the

---

[9] A sex offender is assigned a risk assessment level based on the risk he poses to the community. A.R.S. § 13-3826(E)(1). Risk assessment is conducted by law enforcement agencies. *Id.* § 13-3825.

14

community." *Id.* § 13-3825(C). For level two and three offenders, the notification must be

> made to the surrounding neighborhood, area schools, appropriate community groups and prospective employers. The notification shall include a flyer with a photograph and exact address of the offender as well as a summary of the offender's status and criminal background. A press release and a level two or level three flyer shall be given to the local electronic and print media to enable information to be placed in a local publication.

*Id.* § 13-3826(E)(1)(a). For level one offenders, law enforcement may notify the people with whom the offender resides. *Id.* § 13-3826(E)(1)(b). For offenders who are students or employees of postsecondary education institutions, law enforcement must notify the administration of the institution and, in some instances, the campus community. *Id.* § 13-3825(G). The Department of Public Safety may also communicate with businesses and organizations that offer electronic communication services about whether an offender's online identifier is being used on their systems. *Id.* § 13-3827(E). The statutory requirements of warnings to various communities about the identities and presence of sex offenders confirm that the legislature views sex offenses as serious crimes. *Cf. Noble*, 171 Ariz. at 177, 829 P.2d at 1223 (noting potential stigmatic effect of widespread access to sex offender registration information).

15

¶27     Indeed, almost all the other crimes for which sex offender registration is authorized or required involve felonies, recidivist behavior, or crimes against children. A.R.S. § 13-3821(A), (C); §§ 13-1401 to -1424 (2001 & Supp. 2007); §§ 13-3551 to -3559 (2001 & Supp. 2007). The authorization of registration for misdemeanors involving sexual motivation strongly suggests that the legislature views such crimes as similar to these other plainly serious offenses.

¶28     Furthermore, A.R.S. § 13-118 requires that the State prove sexual motivation beyond a reasonable doubt, making this factor akin to an element of an aggravated offense. *See In re Winship*, 397 U.S. 358, 364 (1970) (holding that a defendant cannot be constitutionally convicted without "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). For example, simple assault is a misdemeanor. *See* A.R.S. § 13-1203. If, however, certain additional elements are present, a prosecutor may charge aggravated assault, a felony. *Id.* § 13-1204 (Supp. 2007). We view the allegation of sexual motivation as analogous: § 13-118 involves behavior that the legislature views as more serious than the "simple" misdemeanor charges to which the sexual motivation allegation is added.

¶29     Finally, the bill that adopted A.R.S. § 13-118 demonstrates that the legislature views misdemeanors committed

16

with sexual motivation as serious offenses. Public safety was the objective of the bill. 1995 Ariz. Sess. Laws, ch. 257, § 10 (articulating legislative findings). This "paramount governmental interest" was expressly stated as the justification for the reduced privacy that community notification entails for those who are required to register. *Id.* The importance the bill places on protecting the public from sex offenders reflects a legislative view that those who commit offenses with sexual motivation have engaged in more than simple petty crimes.

¶30     In light of these factors, we conclude that the potential of sex offender registration reflects a legislative determination that Fushek has been charged with serious crimes. As the Supreme Court noted in *Blanton*, "[t]he judiciary should not substitute its judgment as to seriousness for that of a legislature, which is far better equipped to perform the task." 489 U.S. at 541-42 (quoting *Landry v. Hoepfner*, 840 F.2d 1201, 1209 (5th Cir. 1988)) (internal quotation marks omitted). We defer to the legislature's determination that misdemeanor crimes involving sexual motivation are serious offenses and hold that when a special allegation of sexual motivation exposes a defendant to the possibility of sex offender registration, Article 2, Section 24 of our Constitution entitles the defendant to a trial by jury.

17

## III.

¶**31**      For the foregoing reasons, we vacate the opinion of the court of appeals and affirm the order of the superior court granting special action relief.


_____
                    Andrew D. Hurwitz, Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
W. Scott Bales, Justice


_____
A. John Pelander, Judge[*]

---

[*]      Justice Michael D. Ryan took no part in the decision in this matter.   Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable A. John Pelander, Chief Judge of the Arizona Court of Appeals, Division Two, was designated to sit in his stead.