203 P.3d 1180

Gabriella Sally **BUCCELLATO**, Ionian Elizabeth Lopez, Naomi Lynn Pascoe, Richard John Cea, Vaye Claudette Daniels, Ashley Justine Thomas, Davina Neang, Elizabeth Jean Dunbar, Kathryn James Robinson, Melissa Kay Borum, Natasha S. Davis, Melanie Joyce Bliss, Aftan Danielle Long, and Kristy L. Hinton, Petitioners–Appellants,

v.

Honorable B. Monte **MORGAN**, Presiding Judge of the Scottsdale City Court, Respondent Judge,

and

State of Arizona, Real Party in Interest–Appellee.

No. 1 CA–CV 07–0652.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 4, 2008.

**122**

Weston Garrou DeWitt & Walters By John H. Weston, Los Angeles, CA, and Law Offices of O. Joseph Chornenky, PC By O. Joseph Chornenky, Phoenix, Attorneys for Petitioners–Appellants.

Deborah Robberson, Scottsdale City Attorney Scottsdale By Kenneth M. Flint, Assistant City Prosecutor, Scottsdale, Attorneys for Real Party in Interest–Appellee.

## OPINION

THOMPSON, Judge.

¶ 1 Appellants appeal from the superior court's denial of their consolidated special action, in which they asked the court to reverse the Scottsdale City Court's determination that they are not entitled to a jury trial. For the following reasons, we affirm the superior court's order and remand these matters to the Scottsdale City Court for bench trials.

### FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Appellants are employed by Skin, a Scottsdale business featuring live exotic dance entertainment. Appellants Buccellato, Lopez, Pascoe, Daniels, Thomas, Neang, Dunbar, Robinson, Borum, Davis, Bliss, Long, and Hinton are dancers cited for violating Scottsdale City Code (S.C.C. or Code) sections 16–242(a) and 16–247(d) and (*l*).[1] Appellant Cea, a manager at Skin, was charged with violating Code sections 16–240(c)(9), 16–241(a), 16–247(a), (b), (k), and (m).[2] Each of the cited offenses is a class one misdemeanor punishable by either a fine up to $2,500, or no more than six months' imprisonment. S.C.C. § 16–257(a). Conviction of three or more violations of the Code

---

1. Section 16–242(a) provides that a person may not work as an adult service provider, i.e., dancing, serving food or beverages, modeling, posing, wrestling, singing, reading, talking or listening, or engaging in any other performance or activity while nude, without first obtaining an adult service provider permit. Section 16–247(d) requires a person providing an adult service to be upon a stage elevated at least eighteen inches above floor level, at a distance of at least three feet from patrons, and separated from patrons by a railing at least three feet above floor level. Section 16–247(*l*) prohibits a patron from placing money on the person or in the costume of an adult service provider while the adult service provider is nude.

2. Section 16–240(c)(9) requires an applicant for an adult service business license to include an accurate floor plan in his or her license application. Section 16–241(a) provides that a person may not work as a sexually oriented business manager without a sexually oriented business manager permit. Sections 16–247(a), (b) and (k) require an adult service business to maintain on its premises a copy of the permits for the manager and each adult service provider, to post certain applicable Code provisions near the entrance of the business, and to maintain a log of all persons providing adult services. Section 16–247(m) prohibits an adult service business manager from knowingly permitting or tolerating any violation of Section 16–247.

within a twelve-month period results in revocation of a permit or license. S.C.C. § 16–251.

¶ 3 After the Scottsdale City Court denied appellants' requests for a jury trial, they filed a special action in the Maricopa County Superior Court pursuant to Arizona Rules of Procedure for Special Actions 1 and 4. The superior court accepted jurisdiction, but denied relief. Appellants timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) § 12–2101(B) (2003).

### ISSUES

¶ 4 Appellants raise two issues on appeal:
(1) Whether appellant dancers are entitled to a jury trial pursuant to Article 2, Section 23 of the Arizona Constitution because the charges against appellants are sufficiently analogous to a common law crime for which a jury trial was available; and
(2) Whether Appellant Cea is entitled to a jury trial under Article 2 of the Arizona Constitution because the charges against him are "serious offenses."

### DISCUSSION

■■■ ¶ 5 When the superior court has accepted jurisdiction and determined the merits of a special-action petition, we review whether the court abused its discretion by its grant or denial of relief. *Crowell v. Jejna,* 215 Ariz. 534, 536, ¶ 5, 161 P.3d 577, 579 (App.2007) (citation omitted). However, because eligibility for a jury trial is a question of law, we determine the merits of such a request de novo. *Id.*

[3] ¶ 6 We apply a two-part test to determine whether a defendant is constitutionally entitled to a jury trial because two separate provisions of the Arizona Constitution "secure the right to jury trial for certain criminal defendants." *Id.* at 536, ¶ 6, 161 P.3d 577 (quoting *Derendal v. Griffith,* 209 Ariz. 416, 419, ¶ 7, 104 P.3d 147, 150 (2005)). Article 2, Section 23 of the Arizona Constitution preserves the right to trial by jury as it existed at common law prior to statehood, whereas Article 2, Section 24 requires a jury trial in a criminal case for which the lawmaker has determined that the offense is "serious," even if no right to a jury trial is found under Article 2, Section 23. *Id.* at 536–37, ¶¶ 7–8, 161 P.3d at 579–80.

### A. Common Law Antecedent

■■■ ¶ 7 To determine whether a defendant is guaranteed a right to a jury trial under Article 2, Section 23 of the Arizona Constitution, we must resolve whether the offense of which the defendant is accused has a "common law antecedent that guaranteed a right to trial by jury at the time of Arizona statehood." *Id.* at 536–37, ¶ 7, 161 P.3d at 579–80 (quoting *Derendal,* 209 Ariz. at 425, ¶ 36, 104 P.3d at 156). Although a current offense need not be identical, or even nearly identical, to a common law offense in order to establish the right to a jury trial, it must be "of the same character" as the common law crime. *Id.* at 539–40, ¶ 22, 161 P.3d at 582–83.

¶ 8 We held in *Crowell* that a defendant charged with the same offenses as the appellant dancers was not entitled to a jury trial pursuant to Article 2, Section 23 because the cited offenses do not have a common law antecedent for which the right to jury trial was guaranteed at the time of statehood. *Id.* at 540, ¶ 23, 161 P.3d at 583. In particular, we ruled that the Code regulates the provision of adult services, but does not prohibit them "in the same manner as the common-law ban on indecent exposure prohibited the public exposure of one's private parts." *Id.* at 539, ¶ 21, 161 P.3d at 582. We concluded that because the charged offenses, violations of Scottsdale's limited restrictions on nude dancing, were not of the same character as the common law crime of indecent exposure, the defendant was not entitled to a jury trial pursuant to Article 2, Section 23 of the Arizona Constitution. *Id.* at 540, ¶ 23, 161 P.3d at 583.

¶ 9 Appellants concede that there is no common law analog to the City's charges that appellants engaged in nude dancing without a permit in violation of S.C.C. § 16–247(a). Nevertheless, they urge us to reconsider our ruling in *Crowell* insofar as it applies to S.C.C. § 16–247(d), which dictates the dis-

tance an adult service provider must maintain from patrons while dancing. Appellants contend that charge is sufficiently similar to the common law crime of indecent exposure to warrant a jury trial because such distance regulations are designed to further a societal interest in morality, and are therefore similar to the concerns underlying the common law offense prohibiting indecent exposure. We decline to reconsider our holding in *Crowell*, in which we specifically considered the Code's distance regulations and held that they are reasonably tailored to permit nude dancing and do not largely prohibit such performances, as was the aim of the common law offense of indecent exposure.

## B. Severe Consequences

■ ¶ 10 We turn, then, to the second test we may apply to determine whether a defendant is constitutionally entitled to a jury trial under the Arizona Constitution. Pursuant to Article 2, Section 24 of the Arizona Constitution, which is Arizona's "analog to the Sixth Amendment," we analyze the "seriousness" of the charged offense to determine whether a jury trial is required. *Id.* at 537, ¶ 8, 161 P.3d at 580. We presume that no jury right attaches if the lawmaker has defined the offense to be a misdemeanor punishable by no more than six months' incarceration, unless the defendant rebuts this presumption by "demonstrating that the offense carries additional severe, direct, uniformly applied, statutory consequences that reflect the legislature's judgment that the offense is serious." *Id.*

■ ¶ 11 Appellants contend that the ordinance violations with which Appellant Cea has been charged carry additional consequences that render them so serious as to warrant a jury trial pursuant to Article 2, Section 24 of the Arizona Constitution, even though he faces no more than six months' incarceration on any one charge. In particular, appellants cite S.C.C. § 16–251(*l*), which provides, as relevant: "The director shall revoke a license or permit issued pursuant to this article if the licensee or permittee: (1) is

convicted of three (3) or more violations of this article in any twelve (12) month period." [3] Appellants argue that because Cea will face the mandatory revocation of his adult service manager permit in addition to any incarceration imposed if he is convicted of the charged offenses, the charges against him are "serious" and require a jury trial pursuant to Article 2, Section 24 of the Arizona Constitution. To determine whether appellants have rebutted the presumption that Cea is not entitled to a jury trial, we examine whether they have established that the revocation of his adult service business manager permit meets the criteria for a serious offense. *Derendal*, 209 Ariz. at 422, ¶ 22, 104 P.3d at 153.

### 1. Arises Directly From Statutory Law

¶ 12 First, the Arizona Supreme Court noted in *Derendal* that the allegedly severe collateral consequence must arise directly from Arizona statutory law because, "it is neither practical nor possible 'for a state court to conjure up all possible consequences that might flow from a state court conviction when those consequences do not flow from the law of the state.'" *Id.* (quoting *State v. Strohson (Cantrell)*, 190 Ariz. 120, 125, 945 P.2d 1251, 1256 (1997)). The court stated that it would not evaluate each and every "possible societal repercussion a defendant might face upon conviction of a misdemeanor criminal offense" to determine whether the defendant is entitled to a jury trial. *Id.* at 422, ¶ 23, 104 P.3d 147.

¶ 13 The City contends the revocation of Cea's sexually oriented business manager permit does not arise from Arizona's statutory law because the Code is applicable only in Scottsdale and not throughout Arizona. However, it is clear from an examination of the Arizona Supreme Court's decision in *Derendal* that the court's ruling is equally applicable when, as in this case, the penalty stems from the same legislation that creates the criminal offense. The court reasoned that it would only consider statutory penalties because Arizona's courts could not be charged

---

3. The City points out that, pursuant to S.C.C. §§ 16–252 and 16–253, revocation is subject to appeal. For purposes of our analysis, we assume

that Cea's adult service business manager permit will be revoked if he is convicted of the charged offenses.

with evaluating each and every repercussion a defendant might face if convicted in order to determine whether a jury trial was warranted. *Id.* The court intended that, for purposes of determining whether a crime has been defined by a legislative body as a "serious offense," only those additional penalties imposed by that legislative body will be considered.[4] In this case, we will consider the additional penalties imposed by the Scottsdale City Council to determine whether it considered the Code violations "serious offenses" for which a jury trial would be appropriate.[5]

## 2. Severe Consequences

¶ 14 Next, the additional consequence that attends a misdemeanor conviction must be severe before a jury trial will be required. *Id.,* at 423, ¶ 24, 104 P.3d at 154. "To mandate a jury trial, collateral consequences must 'approximate in severity the loss of liberty that a prison term entails.'" *Id.* (quoting *Blanton v. City of North Las Vegas,* 489 U.S. 538, 542, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989)). It is the "rare situation" in which the additional statutory penalty, viewed in conjunction with an authorized period of incarceration of six months or less, will reflect a legislative determination that the offense is serious, rather than petty. *Fushek v. State,* 218 Ariz. 285, 291, ¶ 22, 183 P.3d 536, 542 (2008) (stating that the requirement that a defendant register as a sex offender if convicted for misdemeanors involving sexual motivation strongly suggested that the legislature viewed such crimes as similar to more serious offenses) (citations omitted).

¶ 15 Appellants argue that Cea's potential loss of his sexually oriented business manager permit is a severe consequence because it will impair his ability to "facilitate the operation of an expressive business," which they claim is an activity protected by the First Amendment and therefore a fundamental right protected from state infringement by the due process clause of the Fourteenth Amendment of the United States Constitution. Yet, appellants cite no authority that "facilitating the operation of an expressive business" is a fundamental personal right protected by the First Amendment. *Cf. State v. Miller,* 127 Ariz. 144, 145–46, 618 P.2d 638, 639–40 (App.1980) (rejecting the argument that the sale of spirituous liquor is a "fundamental right" and holding it is a privilege subject to government licensing and control).

¶ 16 The loss of the right to manage a sexually oriented business does not approximate the severity of a prison term and, further, is not the type of severe consequence that indicates that the Scottsdale City Council views such a loss as sufficiently serious to entitle defendant to a jury trial. *Compare Cantrell,* 190 Ariz. at 125, 945 P.2d at 1256 (holding that the loss of the right to possess a firearm "does not present the type of universal grave consequence we have found in cases invoking a right to jury trial"), *with Fushek,* 218 Ariz. at 292–93, ¶ 30, 183 P.3d at 543–44 (holding that the requirement that a defendant register as a sex offender for the rest of his life reflected a legislative determination that the defendant had been charged with a serious crime and was entitled to a jury trial).

## 3. Uniformity

¶ 17 Finally, we consider only those collateral consequences that "apply uniformly to all persons convicted of a *particular offense.*" *Derendal,* 209 Ariz. at 423, ¶ 25, 104 P.3d at 154 (emphasis added). "The uniformity requirement avoids the anomalous situation where some persons would be entitled to a jury trial and others would not, although charged with exactly the same substantive Arizona crime." *Fushek,* 218 Ariz. at 289, ¶ 14, 183 P.3d at 540 (citations omitted). We therefore do not consider any consequences that would not apply to every person convict-

---

4. The court in *Derendal* referenced Arizona statutory law because Derendal had been charged with a misdemeanor crime under the Arizona Revised Statutes. *Id.* at 418, ¶ 2, 104 P.3d at 149.

5. The City argues that the revocation of Cea's sexually oriented business manager permit is an administrative civil consequence of his violation of the Code, not a punishment. Administrative consequences are within the contemplation of the court's reasoning in *Derendal.*

ed of the charged crime at the time of conviction. *Id.* *See, e.g., Stoudamire v. Simon,* 213 Ariz. 296, 299, ¶ 12, 141 P.3d 776, 779 (App.2006) (holding no jury trial was required for a misdemeanor drug offense even though conviction could cause a later denial of an application for a professional license).

¶ 18 In this case, conviction of any one of the particular charged offenses would not result in the loss of Cea's sexually oriented business manager permit. S.C.C. § 16–251. The City's right to revoke Cea's permit only arises if he is convicted of multiple charges. *Id.* Therefore, the consequence of permit revocation is not uniformly applied to all persons convicted of any particular charge and we will not consider it to determine whether Cea is entitled to a jury trial.

 ¶ 19 Appellants urge us to consider the fact that Cea faces multiple misdemeanor charges for purposes of assessing whether he has the right to a jury trial.[6] The Arizona Supreme Court has rejected the argument that the penalties attached to separate misdemeanor charges alleged in a single complaint must be considered together to determine whether a defendant is entitled to a jury trial. *Bruce v. State,* 126 Ariz. 271, 272, 614 P.2d 813, 814 (1980). "[W]here a defendant is charged with several petty offenses, factually related or arising out of a single event, there is no constitutional requirement of a jury trial but the actual punishment may not exceed that which would be permissible without a jury trial in case of a single offense." *Id.* Appellants contend that if Cea was tried without a jury and convicted of multiple offenses, this principle would be violated because Cea's license would be revoked, a penalty not applicable if he was charged with a single offense. However, the court's discussion in *Bruce* concerned only incarceration resulting from conviction, and did not apply to non-incarceration consequences. There is no suggestion, for example in *Bruce,* that the defendant there would have been entitled to a jury trial because he faced the potential of multiple restitution awards on the multiple petty assault charges brought

against him, even though restitution is among the "consequences" of a criminal conviction.

¶ 20 The proposed revocation of Cea's sexually oriented business manager permit is not a uniform consequence that would entitle Cea to a jury trial.

## CONCLUSION

¶ 21 For the foregoing reasons, we affirm the superior court's decision and remand this matter to the Scottsdale City Court for a bench trial.

CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge, and SHELDON H. WEISBERG, Judge.

---

**6.** Appellee argues that appellants did not raise this argument in the municipal or superior courts and have therefore waived it. We determine from our review of the record that appellants preserved this issue for appeal.