IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————————

SAMUEL FUENTES,
*Petitioner/Appellant*,

*v.*

HON. JAY CRANSHAW, CITY MAGISTRATE AND
TUCSON CITY COURT,
*Respondent Judge/Appellees*,

*and*

THE STATE OF ARIZONA,
TUCSON CITY ATTORNEY'S OFFICE, CRIMINAL DIVISION,
*Real Party in Interest*.

No. 2 CA-CV 2023-0022
Filed December 13, 2023

———————————————

Appeal from the Superior Court in Pima County
No. C20223736
The Honorable D. Douglas Metcalf, Judge

**AFFIRMED**

———————————————

COUNSEL

Robert S. Wolkin, Tucson
*Counsel for Petitioner/Appellant*

Tucson City Attorney's Office, Criminal Division
Michael G. Rankin, Tucson City Attorney
Alan L. Merritt, Deputy City Attorney
By Mari L. Worman, Principal Assistant Prosecuting City Attorney, Tucson
*Counsel for Real Party in Interest*

## OPINION

Judge Sklar authored the opinion of the Court, in which Vice Chief Judge Staring and Judge O'Neil concurred.

S K L A R, Judge:

¶1        When a parent is convicted of domestic violence, that conviction can lead to consequences beyond the criminal sentence. Applicable here, if the parent is later involved in a divorce or paternity case, the parent may be required to rebut a statutory presumption against sole or joint legal decision-making. A.R.S. § 25-403.03(D). Likewise, the parent may be required to carry an evidentiary burden before being awarded parenting time. § 25-403.03(F).

¶2        This case concerns whether these and related statutory consequences apply uniformly at the time of conviction, such that they would entitle defendants to jury trials in misdemeanor domestic-violence cases. We conclude that they do not. We therefore affirm the rulings of both the superior court and the Tucson City Court that Samuel Fuentes is not entitled to a jury trial on his misdemeanor domestic-violence charges.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3        The parties do not dispute the relevant facts. Fuentes is accused of initiating an argument in July 2021 with his wife while intoxicated, then slamming his fists on a car and pushing his wife. This alleged conduct occurred in the presence of the couple's three children.

¶4        Later that month, Fuentes was charged in Tucson City Court with six misdemeanor offenses. Three of them carry a domestic-violence designation under A.R.S. § 13-3601(H): (1) assault with no injury; (2) disorderly conduct through noise; and (3) defacing or damaging property valued less than $250. In addition, Fuentes was charged with three counts of contributing to the delinquency of a minor. That crime is not eligible for a domestic-violence determination, though the complaint improperly listed one count as involving domestic violence. *See* § 13-3601(A) (not including contributing to delinquency of minor in list of domestic-violence eligible offenses).

**¶5** In December 2021, Fuentes filed a demand for a jury trial. He argued that in a potential divorce proceeding, a conviction on the domestic-violence charges would affect his rights concerning legal decision-making and parenting time. This consequence, he argued, triggered a jury-trial right under *Derendal v. Griffith*, 209 Ariz. 416 (2005). The respondent judge disagreed and denied Fuentes's demand in April 2022.

**¶6** Fuentes then sought relief via special-action complaint in the superior court. On December 1, 2022, the superior court ruled against Fuentes, in effect affirming the denial of the jury trial. This timely appeal followed.

## JURY-TRIAL ELIGIBILITY

**¶7** We generally review a superior court's decision in a special action for an abuse of discretion. *Bazzanella*, 195 Ariz. 372, ¶ 3. However, because jury-trial eligibility is a question of law, we independently determine the merits of such a request de novo. *Ottaway v. Smith*, 210 Ariz. 490, ¶ 5 (App. 2005).

## I. Scope of jury-trial right

**¶8** Under the Arizona Constitution, "[t]he right of trial by jury shall remain inviolate." Ariz. Const. art. II, § 23. This provision preserves common-law jury-trial rights that existed when Arizona became a state. *Crowell v. Jejna*, 215 Ariz. 534, ¶ 7 (App. 2007). It therefore entitles a defendant to a jury trial only if the "statutory offense has a common law antecedent that guaranteed a right to trial by jury at the time of Arizona statehood." *Derendal*, 209 Ariz. 416, ¶ 36. Fuentes does not argue that the offenses at issue have common-law antecedents that would entitle him to a jury trial. We need not address the issue, and we express no opinion on it.

**¶9** The Arizona Constitution also entitles criminal defendants to "a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." Ariz. Const. art. II, § 24. We construe this provision consistently with the United States Constitution's Sixth Amendment. *Derendal*, 209 Ariz. 416, ¶ 13. Under the Sixth Amendment, jury trials are available only for serious, not petty, crimes. *Blanton v. City of North Las Vegas*, 489 U.S. 538, 541 (1989) ("It has long been settled that there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision.") (citations and internal quotations omitted).

¶10     The United States Supreme Court has held that where an offense's maximum term of imprisonment is six months, the offense is presumptively petty. *Id.* at 543-44. In Arizona, the maximum term of imprisonment for class-one misdemeanors is six months. A.R.S. § 13-707(A). Thus, our case law generally holds that defendants accused of class-one misdemeanors are presumptively not entitled to jury trials. *E.g.*, *Derendal*, 209 Ariz. 416, ¶ 40; *Benitez v. Dunevant*, 198 Ariz. 90, ¶ 13 (2000) (collecting cases).

¶11     However, that presumption is rebuttable. Where the maximum incarceration term does not exceed six months, the offense can still warrant a jury trial if it subjects the defendant to additional consequences reflecting a legislative determination that the offense is serious. *See Derendal*, 209 Ariz. 416, ¶¶ 21, 25, 37. To rebut the presumption, a defendant must show: (1) the consequences arise directly from Arizona statutory law; (2) the consequences approximate the severity of the loss of liberty implicated in a prison term; and (3) the consequences apply "uniformly to all persons convicted of a particular offense." *Id.* ¶¶ 22-25. Applying this test, our supreme court has held that a requirement to register as a sex offender rebuts the presumption and entitles the defendant to a jury trial. *Fushek v. State*, 218 Ariz. 285, ¶ 30 (2008).

¶12     In this case, Fuentes's misdemeanor domestic-violence charges are presumptively not jury eligible. *See* A.R.S. §§ 13-1203(B) (assault committed intentionally or knowingly is class-one misdemeanor); 13-2904(A)(2), (B) (disorderly conduct through noise is class-one misdemeanor); 13-1602(B)(6) (criminal damage is class-two misdemeanor where amount is less than $250). We must address whether a domestic-violence designation overcomes that presumption, in light of the consequences in divorce and paternity cases.

## II.     Background on domestic-relations consequences of domestic-violence offenses

¶13     The domestic-violence designation applies to enumerated offenses where the defendant and victim have a qualifying relationship. Section 13-3601(A) lists both the offenses and relationships. *See also* § 13-3601(H) (requiring indictment and other charging documents to contain domestic-violence designation where offense qualifies as domestic violence). Fuentes's charges for assault, disorderly conduct, and damaging or defacing property are enumerated offenses. *See* § 13-3601(A). To the extent Fuentes's wife and children are considered victims, his relationship with them would qualify. *See* § 13-3601(A)(1), (2), (4). A domestic-violence

designation does not change the substantive charge. *State ex rel. McDougall v. Strohson*, 190 Ariz. 120, 123-24 (1997). However, a conviction of an offense with a domestic-violence designation can have collateral consequences, such as a federal prohibition on possessing firearms. *Id.* at 124 (citing 18 U.S.C. § 922(g)(9)).

¶14 A domestic-violence conviction can also lead to consequences where the offender seeks legal decision-making and parenting time in a divorce or paternity case. As to legal decision-making, Section 25-403.03(D) imposes a "rebuttable presumption that an award of sole or joint legal decision-making to the parent who committed the act of domestic violence is contrary to the child's best interests." This presumption applies only where a court determines that the parent has committed an act that meets a definition of "domestic violence" in Section 25-403.03(D). As we will explain, not all acts giving rise to domestic-violence convictions will do so.

¶15 With respect to parenting time, Section 25-403.03(F) requires a parent who has committed domestic violence—which is not defined for purposes of subsection (F)—to carry the burden of proving "to the court's satisfaction that parenting time will not endanger the child or significantly impair the child's emotional development." If the parent meets that burden, "the court shall place conditions on parenting time that best protect the child and the other parent from further harm." § 25-403.03(F).

¶16 In addition, courts determining legal decision-making and parenting time must consider "all factors that are relevant to the child's physical and emotional well-being." A.R.S. § 25-403(A). This includes "[w]hether there has been domestic violence or child abuse pursuant to § 25-403.03." § 25-403(A)(8). The issue we confront is whether these domestic-relations consequences satisfy *Derendal*'s three-prong test.

## III. Application of *Derendal*—the undisputed prongs

¶17 The first *Derendal* prong is whether the consequences arise directly from Arizona statutory law. 209 Ariz. 416, ¶ 23. Because they flow from Sections 25-403 and 25-403.03, this prong is satisfied.

¶18 *Derendal*'s second prong requires the consequences to "approximate in severity the loss of liberty" entailed by a prison term. *Derendal*, 209 Ariz. 416, ¶ 24. The parties agree that the domestic-relations consequences would satisfy this prong. Specifically, they point to the potential implications that these consequences would have on Fuentes's fundamental right to parent. We generally do not decide issues that are

undisputed and unnecessary to resolving an appeal, so we assume without deciding that the parties are correct. *See State v. Milke*, 177 Ariz. 118, 129 (1993) (noting that reviewing courts should not address issues that are unnecessary to disposition of appeal).

## IV. Application of *Derendal*—uniformity

**¶19** The parties dispute the third *Derendal* prong, which requires that the domestic-relations consequences apply uniformly. *Derendal*, 209 Ariz. 416, ¶ 25.

### A. Background on uniformity requirement

**¶20** The uniformity requirement protects against the jury-trial right applying to some defendants but not others, even though they are charged with the same substantive crime. *Fushek*, 218 Ariz. 285, ¶ 14. It also ensures that the jury-trial right is determined based on "the seriousness of the offense," not "the impact of a conviction on an individual defendant." *Derendal*, 209 Ariz. 416, ¶ 25.

**¶21** In evaluating uniformity, we look to whether "the consequence would apply to every person convicted." *Fushek*, 218 Ariz. 285, ¶ 14. Thus, for consequences to apply uniformly, they must apply "at the time of conviction." *Id.* This requirement means that "without more" than the conviction itself, the sentencing court may impose the consequence. *Id.* ¶ 15. Otherwise, it would imply that "some persons would be entitled to a jury trial and others would not, although charged with exactly the same substantive Arizona crime." *Strohson*, 190 Ariz. at 125. Only when the consequence applies uniformly to everyone convicted of an offense can it be said to reflect the legislature's judgment concerning "the seriousness of the offense," rather than merely the severity of its impact on a single defendant. *Derendal*, 209 Ariz. 416, ¶ 25.

**¶22** The uniformity requirement is illustrated by *Fushek*, in which the defendant was charged with ten misdemeanors accompanied by a special allegation of sexual motivation under A.R.S. § 13-118. If proven, that allegation would authorize the court to require the defendant to register as a sex offender. *Fushek*, 218 Ariz. 285, ¶ 15. *Fushek* concluded that the potential registration requirement applied uniformly to all defendants charged with that special allegation, even though the sentencing court retained discretion not to require registration. *Id.* ¶¶ 15-16.

¶23 By contrast, where a misdemeanor drug conviction could lead to restrictions on a defendant's ability to obtain an occupational license, the consequences do not apply uniformly. *Id.* ¶ 15 (citing *Stoudamire v. Simon*, 213 Ariz. 296, ¶12 (App. 2006)). Rather, they apply only to defendants who later decide to seek the license. *Id.*; *see also Buccellato v. Morgan*, 220 Ariz. 120, ¶ 18 (App. 2008) (holding that possible loss of business permit did not apply uniformly because under city code, revocation required conviction on multiple charges).

### B. Defining the substantive crime

¶24 In applying the uniformity requirement, the parties first disagree as to how broadly we should define the crime in determining whether the domestic-relations consequences apply uniformly. Fuentes argues that we should define the crime as limited to misdemeanor domestic-violence offenses where the defendant and victim have a child in common. By contrast, the state argues that we should define the crime more broadly as including all domestic-violence misdemeanors. This would include not only defendants who have children in common with the victim, but those with other qualifying relationships, such as current and former spouses, other relatives, certain children who resided with the defendant, and current and former romantic partners. § 13-3601(A)(1)-(6).

¶25 We agree with the state. The domestic-relations consequences at issue do not depend on which qualifying relationship resulted in the offense being classified as domestic violence. For example, the defendant would face those consequences regardless of whether the domestic-violence conviction involved a victim who was married to the defendant, lived in the same household, or had a common child. *Compare* § 13-3601(A)(1)-(6), *with* § 25-403.03(D). But if jury eligibility turned on only one of these relationships—the presence of a common child—the state could simply allege and prove a different qualifying relationship. The common child would no longer be relevant to the crime. Thus, under Fuentes's theory, jury eligibility would depend on the state's choice to proceed based on one qualifying relationship or another, even though the charges, convictions, and consequences are the same.

¶26 Alternatively, under Fuentes's theory, jury eligibility would depend on the defendant's own assertion—irrelevant to the criminal case—that the defendant shares a child in common with the victim. In that situation, the jury-trial right would depend on a personal circumstance of the defendant that has not been alleged, need not be proven, and is not relevant at trial. The jury-trial right cannot turn on personal circumstances

such as this. *See Strohson*, 190 Ariz. at 125 ("[W]e have never determined jury eligibility based upon an analysis of the individual defendant before the court."). We therefore do not define the substantive crime as limited to domestic-violence offenses in which the defendant and victim have a common child. Instead, our uniformity analysis examines whether the domestic-relations consequences apply uniformly at the time of conviction to all defendants convicted of domestic-violence offenses.

### C. Applicability of consequences at time of conviction

¶27 Turning to the uniformity analysis itself, we first address whether the domestic-relations consequences apply at the time of conviction. We conclude that they do not. They are not even dependent on a conviction. Rather, the legal decision-making consequences depend on whether the defendant's conduct meets the definition of Section 25-403.03(D). Similarly, the parenting-time consequences depend on whether the conduct constituted "domestic violence" under Section 25-403.03(F), which does not define the term. Not all offenses that constitute domestic violence under Section 13-3601(A)—which again, is the relevant statute in criminal cases—will also do so under A.R.S. § 25-403.03(D) or (F). For example, while Section 13-3601 requires only a qualifying offense and qualifying relationship, Section 25-403.03(D) requires the offender to have committed one of three types of acts against the "other parent." These are:

> 1. Intentionally, knowingly or recklessly causing or attempting to cause sexual assault or serious physical injury;
>
> 2. Plac[ing] a person in reasonable apprehension of imminent serious physical injury to any person; [or]
>
> 3. Engag[ing] in a pattern of behavior for which a court may issue an ex parte order to protect the other parent who is seeking child custody or to protect the child and the child's siblings.

§ 25-403.03(D)(1)-(3).

¶28 This case illustrates the differences between the two statutes. As applied here, depending on the facts—which are not before us, and on which we express no opinion—a future court might find that even if

Fuentes were convicted, his conduct did not satisfy Section 25-403.03(D)'s definition of domestic violence. *See Engstrom v. McCarthy*, 243 Ariz. 469, ¶ 16 (App. 2018) (directing superior court to make factual findings concerning whether acts constituted domestic violence under subsection (D)).

**¶29** Specifically, Fuentes's charges concern a shove, disorderly conduct through noise, and damaging or defacing property. A court might find that even if proven, this conduct did not involve serious physical injury or imminent reasonable apprehension of such injury. § 25-403.03(D)(1)-(2). Likewise, although Fuentes correctly points out that the alleged conduct could justify an ex parte order of protection under A.R.S. § 13-3602, a court might still find that it was not the "pattern of behavior" required by Section 25-403.03(D)(3). A court might also find that it did not constitute domestic violence for purposes of Section 25-403.03(F). Any conviction would be relevant to these findings. *See* §§ 25-403(A)(8), 25-403.03(C)(1), (D). But it would not be conclusive.

**¶30** Thus, the domestic-relations consequences arise independently in a separate proceeding. That proceeding addresses differently defined behavior that might, in individual cases, overlap with elements of a domestic-violence offense. Those consequences cannot satisfy the test in *Derendal*, which extends the jury-trial right based on "additional grave consequences that attend a misdemeanor conviction." *Derendal*, 209 Ariz. 416, ¶ 21.

**¶31** The comparison between this case and *Fushek* illustrates the point. The allegation of sexual motivation at issue in *Fushek* entitled the defendant to a jury trial "because every time a special allegation of sexual motivation is filed, the defendant against whom the allegation is made faces possible sex offender registration as part of the sentencing court's disposition of the case." *Fushek*, 218 Ariz. 285, ¶ 15. Where sexual motivation is alleged and proven, the sentencing court may order sex-offender registration based solely on that proven allegation, "without more." *Id.; see* A.R.S. § 13-3821(C). The court extends the jury-trial right whenever the state has made such an allegation, because only then does the conviction trigger the consequence. *See Fushek*, 218 Ariz. 285, ¶¶ 15-16.

**¶32** It is not so simple here. The domestic-relations consequences at issue do not depend on the allegations that must be alleged and proven to sustain a criminal conviction. Nor do they apply at the time of conviction, as *Derendal* requires. With or without a conviction, the consequences apply on separately defined grounds. They do not, therefore,

reflect a legislative determination concerning the seriousness of any domestic-violence offense. *See Derendal*, 209 Ariz. 416, ¶ 37.

### D.    Uniform application of the consequences

**¶33**      Of course, in many cases where a defendant is convicted of a domestic-violence offense, the underlying conduct will also constitute domestic violence under Section 25-403.03(D) and (F). We next address whether even for that subset of defendants, the consequences apply uniformly. We conclude that they do not. First, those consequences apply only to offenders who later become involved in a divorce or paternity case that implicates legal decision-making or parenting time. For other offenders, the consequences will never apply.

**¶34**      Even for offenders involved in such cases, the superior court may not mechanistically prohibit a parent who has committed a domestic-violence offense from exercising joint legal decision-making or parenting time. Rather, Section 25-403.03's most definitive rule is that a court may not order joint legal decision-making if the domestic violence was "significant" or if the offender has a "significant history of domestic violence." § 25-403.03(A). But that prohibition applies only if the court makes the additional factual finding that the domestic violence was "significant." *See DeLuna v. Petitto*, 247 Ariz. 420, ¶ 15 & n.6 (App. 2019). The domestic violence's significance is not at issue in a criminal case and will therefore not be addressed until the divorce or paternity proceeding. Thus, this consequence does not apply uniformly to defendants convicted of domestic violence.

**¶35**      On all other issues, domestic violence's relevance in divorce and paternity cases is both fact-specific and discretionary. For example, where the domestic violence was not "significant" or part of a "significant history," the superior court must consider the factors in Section 25-403.03(E) to determine if the offender has rebutted the presumption against legal decision-making authority. *Id.* ¶ 12 (requiring courts to "make specific findings on the record that there is sufficient evidence to rebut the presumption" and to consider all factors included under Section 25-403.03(E)). These factors look broadly to the child's best interests, rehabilitation efforts by the offending parent, and subsequent domestic violence. *Id.*; *Olesen v. Daniel*, 251 Ariz. 25, ¶ 23 (App. 2021) ("[T]he statute explicitly invites the offending parent to present evidence of a change in circumstances."). Rather than requiring a uniform result, these factors allow courts wide discretion to determine the relevance of a domestic-violence conviction to legal decision-making.

¶36 The same is true as to Section 25-403.03(F)'s burden of persuasion concerning parenting time. In determining whether the offender has demonstrated that parenting time "will not endanger the child or significantly impair the child's emotional development," the superior court must make specific findings that explain its reasoning and conclusions. *Engstrom*, 243 Ariz. 469, ¶ 18 (quoting § 25-403.03(F)). These fact-specific findings can address any relevant issue, such as the parties' physical and mental health, their more recent history, and the amount of time that has passed since the domestic violence. *See, e.g.*, *In re Marriage of Morris & Mandel*, 255 Ariz. 158, ¶ 25 (App. 2023). Beyond that, a court has significant discretion in imposing conditions on the exercise of parenting time, including those delineated in the statute. *See* § 25-403.03(F)(9) (allowing court to impose "any other condition that the court determines is necessary to protect the child, the other parent and any other family or household member").

¶37 Finally, after engaging in these analyses, the superior court must consider the domestic violence in the context of numerous other statutory factors concerning the child's best interests. § 25-403(A). As to each of these factors, the court must make specific findings if legal decision-making or parenting time is contested. § 25-403(B); *Olesen*, 251 Ariz. 25, ¶ 17. Only after doing so may the court enter legal decision-making and parenting-time orders. And after that, such orders are subject to potential modification after one year—sooner under certain circumstances—if one parent files a petition to modify. *See* A.R.S. § 25-411(A).

¶38 In short, rather than applying uniformly to all defendants at the time of conviction, consequences attendant to a domestic-violence conviction apply in a fact-specific, discretionary manner, sometimes long after the conviction, if at all. Fuentes's contrary argument undermines the reasoning behind *Derendal*'s uniformity requirement. It looks not to "the seriousness of the offense," but to the severity of its impact on some defendants. *See Derendal*, 209 Ariz. 416, ¶ 25. We therefore conclude that the domestic-relations consequences do not satisfy the third prong of *Derendal*.

## DISPOSITION

¶39 Fuentes is not entitled to a jury trial on his misdemeanor domestic-violence charges. We affirm the judgment of the superior court.